WHITE & CASE

July 5, 2016

VIA ECF AND HAND DELIVERY

Honorable Kevin J. Carey
United States Bankruptcy Court
for the District of Delaware
824 N. Market Street, 5th Floor
Wilmington, Delaware 19801

White & Case LLP
1155 Avenue of the Americas
New York, NY 10036-2787
T +1 212 819 8200

whitecase.com

Re: In re Hercules Offshore, Inc., *et al.*, Case No. 16-11385 (KJC)

We write on behalf of the Ad Hoc Group of First Lien Lenders (the "Ad Hoc Group") and Luminus Energy Partners Master Fund, Ltd. ("Luminus") with respect to a discovery dispute between the Ad Hoc Group and Luminus, on the one hand, and the Official Committee of Equity Security Holders (the "Committee") and Centerbridge Partners, L.P. ("Centerbridge" and, together with the Committee, the "Equity Parties"), on the other. The Ad Hoc Group and Luminus ask the Court to deny the Equity Parties' request to compel the Ad Hoc Group and Luminus to produce "all Documents relating to the valuation HERO and its affiliates[,]" and to enter a protective order preventing discovery from Luminus and the Ad Hoc Group with respect to valuation or the internal motivations, opinions or beliefs of Luminus and the Ad Hoc Group. In addition, the Ad Hoc Group and Luminus agree with the Debtors' requests that (i) a deadline of July 7, 2016 be established for service of additional documents requests, and (ii) all parties be authorized to serve categorical, rather than document-by-document, privilege logs.

**A. The Discovery at Issue**

This is the second bankruptcy of Hercules Offshore, Inc. ("HERO") and certain of its affiliates (together with HERO, the "Debtors") within the last twelve months. The Debtors have proposed a prepackaged plan of reorganization (the "Plan") that is scheduled for a confirmation hearing on August 10, 2016. Neither Luminus nor any of the other Ad Hoc Group members are proponents of the Plan. Rather, they are only supporters of the Plan that provides for unsecured creditors to be paid in full and, if HERO shareholders accept the Plan, HERO shareholders to receive $27.5 million, before the first lien lenders receive even a par recovery.

Centerbridge has objected to the Plan and, on June 10, 2016, served substantially identical first sets of document requests on the Debtors, Luminus, the Ad Hoc Group comprised of seven members and Jefferies Finance, LLC ("Jefferies"). On June 27, 2016, the Committee served the same (and additional) document requests on those parties. In response, those parties have collectively produced 116,076 pages of documents. On July 1, 2016, Centerbridge produced its first documents in response to the document requests propounded by the Debtors on June 8, 2015 and the Ad Hoc Group on June 13, 2016. Centerbridge's production consisted of just 1,052 pages.

Luminus and the Ad Hoc Group objected to the Equity Parties' Request No. 19, which seeks "[a]ll Documents relating to the valuation of HERO and its affiliates[,]" on the grounds that it is vague, overbroad, unduly burdensome, and not relevant to Plan confirmation or any contested matter in the above-captioned chapter 11 cases (the "Cases"). Certainly such information is not proportional to the needs of the Cases under the factors set forth in Federal Rule of Civil Procedure 26(b)(1). Nonetheless, Luminus and the Ad Hoc Group have produced, and continue to produce, valuation-related documents that were provided to or shared with the Debtors or other third parties. Thus, the only documents at issue are those reflecting Luminus' or other Ad Hoc Group members' internal, subjective views about valuation

Honorable Kevin J. Carey
July 5, 2016

that have not been shared with the Debtors or other third parties. The discovery is improper for the reasons set forth below.

### B. The Equity Parties Have Failed to Satisfy Their Obligations to Meet and Confer

The Equity Parties have not satisfied their obligations to meet and confer with the Ad Hoc Group. Despite repeated requests, the Equity Parties have refused to explain why non-proponents' internal, subjective views on valuation are relevant to the Cases.

The Equity Parties have stated that such documents are relevant to "good faith," but have failed to explain how or why the "good faith" of Luminus or the other Ad Hoc Group members is relevant. By e-mail dated June 22, 2016, counsel for the Ad Hoc Group again tried to resolve the dispute over the internal, subjective valuation documents:

> First, with respect to the valuation issue, please advise as to whether Centerbridge and the equity committee will be producing all of their documents that relate to valuation, including any internal documents that describe, discuss or otherwise relate to valuation.
>
> Second, in order to better evaluate your request as to the valuation documents, please explain your position as to how the lenders' intent and good faith as to valuation is at issue in this case. I have asked this several times on our meet-and-confer calls but you haven't given a meaningful explanation, so I am asking again. The lenders are not plan proponents, so it is not clear how or why you think their intent is relevant to confirmation. If you have some authority to suggest that a non-proponent's intent is relevant and discoverable, please share it with us.
>
> Third, valuation is not relevant to good faith. Indeed, valuation is not relevant at all because the market will determine the fair market value of the assets.

The Equity Parties have completely ignored this e-mail. Likewise, the Equity Parties declined to contact the Ad Hoc Group to discuss the meet-and-confer issues raised before seeking relief from the Court. In fact, counsel for the Ad Hoc Group only learned of the Equity Parties' intent to seek such relief second-hand from the Debtors. As a result of the Equity Parties' failure to identify their basis for the discovery as required in a proper meet-and-confer process, the Ad Hoc Group and Luminus are left to speculate as to the position the Equity Parties will take as to why non-proponents' internal, subjective views on valuation are relevant to the Cases.

### C. Valuation Is Not Likely to Be an Issue in the Cases

Based on the Equity Parties' position to date, valuation is irrelevant in the Cases. The Equity Parties have stated that the class of HERO shareholders is unlikely to accept the Plan, and the ballots cast by the original voting deadline for HERO shareholders support that statement. In the case of rejection by the class of HERO shareholders, the Plan contemplates HERO and its subsidiaries' assets being liquidated and the resulting proceeds being distributed to pay administrative claims, priority claims and general unsecured creditors in full and otherwise in accordance with the absolute priority rule. The market will determine the value of those assets and equity will receive exactly what it is entitled to receive under the

Honorable Kevin J. Carey
July 5, 2016

absolute priority rule, regardless of any party's subjective view of value. Thus, there will be no need for valuation testimony in connection with confirmation of the Plan. *See In re Wash. Mut., Inc.*, 461 B.R. 200, 236 (Bankr. D. Del. 2011) ("The Court agrees with the Plan Supporters that it is not necessary to determine the precise value of the Liquidating Trust assets because whatever they are worth will be distributed to creditors and then to shareholders in accordance with the priorities of the Code."), *vacated in part*, No. 08-12229, 2012 WL 1563880 (Bankr. D. Del. Feb. 4, 2012).

### D. Luminus' and the Ad Hoc Group's Subjective Views on Valuation Are Not Relevant

The Equity Parties argue incorrectly that the internal valuations by the Ad Hoc Group are relevant to good faith under section 1129(a)(3). In addition to the fact that valuation is irrelevant to the Cases, the internal work of the Ad Hoc Group members is particularly irrelevant. The law is clear that the focus of the good faith requirement is whether *the plan* under consideration advances the reorganization objectives of chapter 11. *In re PWS Holdings Corp.*, 228 F.3d 224, 242 (3d Cir. 2000) ("[F]or purposes of determining good faith under section 1129(a)(3) . . . the important point of inquiry is the plan itself and whether such a plan will fairly achieve a result consistent with the objectives and purposes of the Bankruptcy Code.") (citing *In re Abbotts Dairies of Pa., Inc.*, 788 F.2d 143, 150 n.5 (3d Cir. 1986) (quoting *In re Madison Hotel Assocs.*, 749 F.2d 410, 425 (7th Cir. 1984))). The good faith standard in section 1129(a)(3) is more narrowly focused than the good faith filing requirement. *In re PPI Enters. (U.S.), Inc.*, 228 B.R. 339, 347 (Bankr. D. Del. 1998), *aff'd* 324 F.3d 197 (3d Cir. 2003). Courts do not consider even the debtor's motives for filing its petition when determining whether the plan fulfills the good faith requirement of section 1129(a)(3). *PPI Enters.*, 228 B.R. at 347.

Moreover, Luminus and the other Ad Hoc Group members are not "proponents" of the Plan. A party that supports a plan filed by another, including through a restructuring support agreement, is not a plan "proponent" for purposes of section 1129. *See In re Greate Bay Hotel & Casino, Inc.*, 251 B.R. 213, 235 (Bankr. D. N.J. 2000) (finding that party who convinced another party to propose, drafted and aggressively supported a competing plan was not a "proponent" of such competing plan for purposes of section 1129(a)(2)); *see also In re Indianapolis Downs, LLC*, 486 B.R. 286, 295 (Bankr. D. Del. 2013) (recognizing, in the vote designation context, that parties to a restructuring support agreement with the debtors who "strongly" supported confirmation of the debtors' plan were not "coproponents" of that plan). Given that the Debtors' prepetition motives are irrelevant to the good faith inquiry, the motives of non-proponent third parties are well beyond irrelevant.

### E. Internal, Subjective Valuation Documents of Non-Proponents Are Not Discoverable

In addition to the fact that valuation is not an issue for confirmation here, non-proponents' internal, subjective views on valuation would not be discoverable. In *CSC Trust Co. v. Energy Future Intermediate Holding Co. LLC (In re Energy Future Holdings Corp.)*, an indenture trustee sought discovery from the debtors and an ad hoc committee of noteholders to obtain internal valuations, as well as communications tending to show the ad hoc committee had helped engineer the chapter 11 filing to avoid payment of a redemption premium. 513 B.R. 651 (Bankr. D. Del. 2014) (Sontchi, J). The court denied the trustee's request for discovery from the ad hoc committee, holding "*information regarding a debtor's valuation and solvency is not obtainable from third parties who have not taken a clear position with regard to the debtor's solvency, and who do not intend to offer expert or other evidence on the issue*." *Id.* at 653-54 (emphasis added). In support of its holding, the court explained "this type of inquiry is not appropriate until and unless [the buyer/party] becomes an active participant in presenting evidence and testimony to

3

Honorable Kevin J. Carey
July 5, 2016

the Court regarding the value of the company." *Id.* at 663 (quoting *In re the Dolan Co.*, Del. Bankr. No. 14-10614, ECF No. 284, Hr'g Tr. (May 2, 2014), pp. 19-21). Additionally, the court cited to the Southern District of New York bankruptcy court's reasoning in *In re Genco Shipping & Trading*, that, "[a]s the internal valuations were not created to be shared, they would be classified as lay opinions, creating a risk of opening the floodgates to 'mini valuation trials'." *Id*. (citing S.D.N.Y. Bankr. No. 14-11108, ECF No. 336, Hr'g Tr. (June 3, 2014), pp. 36-39, 60-63). The court in *Genco* noted that such internal valuations that are not going to be offered into evidence by the party making them are not relevant. *Id*. The *Genco* court also expressed concerns about allowing back-of-the-envelope valuation information into evidence without any showing that it is based on anything meaningful. *Id*. at 38-39.

Here, Luminus and the Ad Hoc Group do not intend to offer expert or other evidence on valuation of the Debtors or their assets in connection with confirmation of the Plan. Indeed, the Equity Parties have not indicated their intent to offer valuation evidence, and it is not clear that any party will do so. As in *Energy Future Holdings* and *Genco*, the Equity Parties' requested valuation discovery should not be permitted.

### F. The Request Is Vague, Overbroad and Unduly Burdensome

In addition to the fact that non-proponents' "good faith" or internal valuations are irrelevant, the Equity Parties' Request No. 19 seeking "[a]ll Documents relating to the valuation of HERO and its affiliates[,]" is vague, overbroad, unduly burdensome and disproportionate to the needs of the Cases. When propounded on lenders, the phrase "relating to valuation" is vague. Valuation of borrowers, collateral and associated credit risk is at the core of lenders' business. Moreover, such documents also contain highly confidential and proprietary information about how lenders go about valuing borrowers and collateral. The Equity Parties seek virtually every document that mentions, refers to or relates, in any way, to any of the Debtor entities or their assets. Review of tens of thousands of documents to parse out which ones relate, in some way, to valuation is an unduly burdensome, time-consuming and costly task.

### G. A Deadline for Serving Document Requests Is Appropriate

The Ad Hoc Group and Luminus agree with Debtors' position that a deadline for service of document requests is appropriate. The Equity Parties collectively have served two separate waves of document requests on the Debtors, the Ad Hoc Group, Luminus and Jefferies, as well as a single set of requests to Prime Clerk. Many of the categories of documents the Equity Parties have requested do not appear to relate to any issues associated with Plan confirmation or any contested matters before or expected to be before the Court—they appear to be a fishing expedition designed to burden the other parties and to try to create leverage in the Cases. Nonetheless, these parties have responded to these requests and produced tens of thousands of pages of documents to the Equity Parties. There comes a time when document discovery must end so that the parties are not wasting time and estate resources on document review and production up to the eve of the hearing on Plan confirmation. Yet, the Equity Parties appear unwilling to agree to any deadline to serve additional document requests even though they have failed to express a reason why such open-ended discovery is necessary. The Debtors' request for a deadline of July 7, 2016 is reasonable and would still allow further requests with leave of the Court if the Equity Parties could demonstrate a legitimate need for such additional discovery and a sensible reason for not having made such requests earlier.

Honorable Kevin J. Carey
July 5, 2016

### H. Categorical Privilege Logs Are Appropriate in the Cases

The Ad Hoc Group and Luminus similarly agree with the Debtors that categorical privilege logs are sufficient and appropriate in the Cases. As the Debtors' cited authorities indicate, the Federal Rules of Civil Procedure and the Delaware District Court's "Default Standard for Discovery" authorize categorical privilege logs in appropriate cases. In light of the short time before Plan confirmation, the massive volume of documents that have been reviewed, and the large number of privileged documents, preparation of document-by-document privilege logs would be a waste of time, effort and estate resources with no apparent benefit. The Equity Parties have given no meaningful reason why categorical privilege logs are not sufficient. Notably, the Equity Parties have not served a document-by-document privilege log.

\* \* \*

In light of all the foregoing, the Ad Hoc Group and Luminus respectfully request that the Court deny the Equity Parties request and enter a protective order precluding the Equity Parties from conducting burdensome and costly discovery regarding valuation or the internal motivations, opinions or beliefs of the Ad Hoc Group and Luminus. The Ad Hoc Group and Luminus also respectfully request that the Court grant the Debtors' requests that (i) a deadline of July 7, 2016 be established for service of additional documents requests and (ii) all parties be authorized to use categorical privilege logs in the Cases.

Respectfully submitted,


*/s/ Glenn M. Kurtz*

**Glenn M. Kurtz**

**T** +212.819.8252
**E** gkurtz@whitecase.com

cc:    Counsel to the Equity Parties (by e-mail)
       Counsel to the Debtors (by e-mail)
       Counsel to Jefferies (by e-mail)
       Counsel to the U.S. Trustee (by e-mail)
       All counsel of record (via ECF)