# **Exhibit B**

Revised Bid Procedures Order (Redline)

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| HERCULES OFFSHORE, INC., *et al.* | ) | Case No. 16-11385 (KJC) |
| | ) | |
| | ) | (Jointly Administered) |
| Debtors.[1] | ) | |
| | ) | **Re: Docket No. ~~———~~534** |

## ORDER (I) AUTHORIZING SELLING DEBTORS' ENTRY INTO THE STALKING HORSE PURCHASE AGREEMENT FOR THE SALE OF THE SELLING DEBTORS' GOM FLEET AND RELATED ASSETS; (II) APPROVING BIDDING PROCEDURES AND BID PROTECTIONS; (III) SCHEDULING A HEARING TO CONSIDER APPROVAL OF THE SALE OF ASSETS; (IV) APPROVING FORM AND MANNER OF NOTICE OF SALE; AND (V) GRANTING RELATED RELIEF

Upon the motion (the "Motion") of the above-captioned debtors and debtors in possession (collectively, the "Debtors"), pursuant to sections 105(a), 363, 365, 503 and 507 of title 11 of the United States Code (the "Bankruptcy Code"), as supplemented by Rules 2002, 6004, 6006, 9007, and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), for the entry of orders approving, among other things, the sale (the "Sale") of the Selling Debtors'[2] GOM Fleet and related Equipment, Rig Documents and Purchase Agreements (each as defined in the Motion), related bidding procedures (the "Bidding Procedures"),[3] which are attached hereto as

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Cliffs Drilling Company (8934); Cliffs Drilling Trinidad L.L.C. (5205); FDT LLC (7581); FDT Holdings LLC (4277); Hercules Drilling Company, LLC (2771); Hercules Offshore, Inc. (2838); Hercules Offshore Services LLC (1670); Hercules Offshore Liftboat Company LLC (5303); HERO Holdings, Inc. (5475); SD Drilling LLC (8190); THE Offshore Drilling Company (4465); THE Onshore Drilling Company (1072); TODCO Americas Inc. (0289); and TODCO International Inc. (0326). The Debtors' corporate headquarters are located at, and the mailing address for each Debtor is, 9 Greenway Plaza, Suite 2200, Houston, TX 77046.

[2] The Selling Debtors are comprised of the following Debtor entities: (i) Hercules Offshore Services LLC; (ii) Hercules Drilling Company LL; (iii) TODCO Americas Inc.; (iv) Cliffs Drilling Company; (v) THE Offshore Drilling Company; and (vi) SD Drilling LLC.

[3] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Bidding Procedures.

Schedule 1, and certain protections for the Stalking Horse Bidder (as defined below) of such assets; and the Court having determined that the relief provided herein is in the best interests of the Debtors, their estates, their creditors, and other parties in interest; and due and adequate notice of the Motion having been given under the circumstances; and upon the record of the hearing on the Motion, and the full record of these cases; and after due deliberation thereon; and good and sufficient cause appearing therefor, it is hereby

**FOUND AND DETERMINED THAT:**

A.    Findings of fact shall be construed as conclusions of law, and conclusions of law shall be construed as findings of fact when applicable.  *See* Bankruptcy Rule 7052.

B.    This Court has jurisdiction over the Motion and the transactions contemplated by the Stalking Horse Purchase Agreement (as defined below) pursuant to 28 U.S.C. §§ 157 and 1334, and this matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (M), and (O). Venue in this District is proper under 28 U.S.C. §§ 1408 and 1409.

C.    Good and sufficient notice of the Motion and the relief sought therein has been given under the circumstances, and no other or further notice is required except as set forth herein with respect to the Auction and the Sale Hearing.  Subject to the immediately preceding sentence, a reasonable opportunity to object or to be heard regarding the relief provided herein has been afforded to all parties in interest in these chapter 11 cases.

D.    The notice procedures set forth herein are appropriate and reasonably calculated to provide all interested parties with timely and proper notice of (i) the Sale of the Selling Debtors' GOM Fleet and related assets (as more fully described in the Stalking Horse Purchase Agreement, the "Assets") pursuant to the Stalking Horse Purchase Agreement, (ii) the Bidding Procedures to be employed in connection with the Auction, (iii) the Auction, and (iv) the Sale Hearing.

2

E.      Good and sufficient business reasons exist for this Court to authorize the Selling Debtors to enter into that certain Purchase and Sale Agreement (the "Stalking Horse Purchase Agreement"), by and among the Selling Debtors and Enterprise Offshore Drilling LLC, as Buyer (the "Stalking Horse Bidder"), substantially in the form appended to the Motion as Exhibit C.

F.      Good and sufficient business reasons exist for this Court to approve (i) the Bidding Procedures substantially in the form attached hereto as Schedule 1, (ii) the payment to the Stalking Horse Bidder of the Break-Up Fee and the Expense Reimbursement (each as defined in the Stalking Horse Purchase Agreement and as modified herein), if necessary, in accordance with the terms of the Stalking Horse Purchase Agreement and this Order; (iii) the scheduling of the Bid Deadline, the Auction, and the Sale Hearing with respect to the proposed Sale; and (iv) the establishment of procedures to fix cure amounts to be paid pursuant to Bankruptcy Code section 365 in connection with the assumption, assignment, and/or transfer of the Assigned Contracts and Assigned Leases (as defined below) to the Successful Bidder.

G.      The Stalking Horse Purchase Agreement, the terms thereof, and the Bidding Procedures were negotiated in good faith and at arm's length.

H.      The Bidding Procedures are reasonably designed to maximize the value to be achieved for the Assets.

I.      The Selling Debtors have demonstrated that the Break-Up Fee and the Expense Reimbursement are actual and necessary costs and expenses of preserving the Selling Debtors' estates within the meaning of Bankruptcy Code section 503(b) and are of substantial benefit to the Selling Debtors' estates by inducing the Stalking Horse Bidder's bid, which has established a bid standard or minimum for other potential bidders for the Assets, thereby ensuring that the Selling Debtors receive the highest and best possible bid for the Assets during the Auction, if any.

3

J.      The Notice of Auction and Sale Hearing (as defined below) is reasonably calculated to provide all interested parties with timely and proper notice of the proposed Sale of the Assets, including, without limitation: (i) the date, time, and place of the Auction, if any; (ii) the Bidding Procedures and the dates and deadlines related thereto; (iii) the Sale Objection Deadline (as defined below) and the date, time, and place of the Sale Hearing; (iv) reasonably specific identification of the Assets; (v) instructions for promptly obtaining a copy of the Stalking Horse Purchase Agreement; (vi) representations describing the Sale as being free and clear of any and all liens, claims, interests, and other encumbrances other than the Assumed Liabilities, with all such liens, claims, interests, and other encumbrances attaching with the same validity and priority to the proceeds of the Sale; and (vii) notice of the proposed assumption and assignment of certain contracts and leases to the Stalking Horse Bidder pursuant to the Stalking Horse Purchase Agreement (or to another Successful Bidder at the conclusion of the Auction, if any), the proposed Cure Amounts (as defined below) relating thereto, and the procedures and deadlines for objecting thereto, and no further notice of the Sale shall be required.

K.      The entry of this Order is in the best interests of the Debtors, their estates, their creditors, and other parties in interest.

**NOW THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:**

1.      The Motion is granted as set forth herein.

2.      All objections to the Motion or to the relief provided herein that have not been withdrawn, waived or settled, and all reservations of rights included therein, are hereby overruled and denied on the merits.

3.      The Selling Debtors' entry into the Stalking Horse Purchase Agreement is hereby approved.

4.      The Stalking Horse Bidder shall constitute a Qualified Bidder for all purposes and in all respects under the Bidding Procedures.

5.      The Bidding Procedures, substantially in the form attached hereto as <u>Schedule 1</u>, are incorporated herein, are approved and shall apply with respect to the Sale of the Assets.  The Selling Debtors (or the Wind Down Entity) are authorized to take any and all actions necessary or appropriate to implement the Bidding Procedures.

6.      ***Bid Deadline***.  As further described in the Bidding Procedures, the deadline for submitting bids for the Assets (the "<u>Bid Deadline</u>") is January 9, 2017 at 5:00 p.m. (prevailing Eastern Time).   No bid shall be deemed to be a Qualified Bid unless such bid meets the requirements set forth in the Bidding Procedures.

7.      ***Auction***.  The Selling Debtors (or the Wind Down Entity) may sell the Assets by conducting the Auction in accordance with the Bidding Procedures.  If the Selling Debtors (or the Wind Down Entity) timely receive one or more Qualified Bids (other than the bid of the Stalking Horse Bidder) in accordance with the Bidding Procedures, then the Auction shall take place on January 12, 2017 at 10:00 a.m. (prevailing Eastern Time) at the offices of Akin Gump Strauss Hauer & Feld LLP, co-counsel to the Debtors, at 1111 Louisiana Street, Houston, TX 77002, or at such other location as the Selling Debtors may hereafter designate (with notice of such alternate location given to all Qualified Bidders under the Bidding Procedures.  Each Qualified Bidder participating at the Auction, if any, shall be required to confirm that it has not engaged in any collusion with respect to the bidding or the Sale.

8.      If no other Qualified Bid is received by the Bid Deadline (other than the Stalking Horse Bid), then the Auction shall not be held, and the Selling Debtors (or the Wind Down

Entity) shall promptly seek this Court's approval of the Sale of the Assets to the Stalking Horse Bidder in accordance with the terms of the Stalking Horse Purchase Agreement.

9.      On the same date that the Selling Debtors (or the Wind Down Entity) determine the Successful Bid, the Selling Debtors (or the Wind Down Entity) shall file on this Court's docket in these chapter 11 cases a notice disclosing the identity of the Successful Bidder, and, if the Selling Debtors (or the Wind Down Entity) deem there to be one, the identity of the Back-Up Bidder (the "Successful Bidder Notice").

10.      ***Sale Hearing***. The Sale Hearing shall be held on [____], 2016 at [____]January 18, 2017 at 10:00 a.m. (prevailing Eastern Time) before the Honorable Kevin J. Carey, United States Bankruptcy Judge for the District of Delaware, at 824 North Market Street, 5th Floor, Wilmington, Delaware 19801. At the Sale Hearing, the Selling Debtors (or the Wind Down Entity) shall seek entry of an order of this Court approving and authorizing the Sale of the Assets to the Successful Bidder. Any obligations of the Selling Debtors set forth in the Stalking Horse Purchase Agreement that are intended to be performed prior to the Sale Hearing and/or entry of the Sale Order pursuant to the Stalking Horse Purchase Agreement are authorized as set forth herein and shall be fully enforceable as of the date of entry of this Order. The Sale Hearing (or any portion thereof) may be adjourned by this Court or by the Selling Debtors (or the Wind Down Entity) (after consultation with the Stalking Horse Bidder or any other Successful Bidder) from time to time without further notice other than by announcement in open court or through the filing of a notice on this Court's docket.

11.      ***Sale Objection Deadline***. The deadline to object to the remaining relief requested in the Motion, including the entry of the proposed Sale Order, is January 13, 2017 at 4:00 p.m. (prevailing Eastern Time) (the "Sale Objection Deadline"). Objections, if any, *must*: (i) be in

6

writing; (ii) conform to the applicable provisions of the Bankruptcy Code, Bankruptcy Rules, and the Local Rules; (iii) state with particularity the legal and factual basis for the objection and the specific grounds therefor; and (iv) be filed with this Court and served so as to be *actually* *received* no later than the Sale Objection Deadline by the following parties (collectively, the "Objection Notice Parties"): (a) the Selling Debtors (or Wind Down Entity), c/o Hercules Offshore, Inc., 9 Greenway Plaza, Suite 2200, Houston, TX 77046 (Attn: Troy L. Carson and Beau Thompson); (b) co-counsel to the Debtors, (i) Akin Gump Strauss Hauer & Feld LLP, One Bryant Park, New York, NY 10036 (Attn: Michael S. Stamer, Esq. and Philip C. Dublin, Esq.) and (ii) Morris, Nichols, Arsht & Tunnell LLP, 1201 N. Market St., 16th Flr., Wilmington, DE 19899 (Attn: Eric D. Schwartz, Esq. and Matthew B. Harvey, Esq.); (c) counsel to the Stalking Horse Bidder, (i) Locke Lord LLP, 600 Travis Street, Suite 2800, Houston, TX 77002 (Attn: Philip Eisenberg, Esq. and Steve Peterson, Esq.) and (ii) Thompson & Knight, LLP, 333 Clay Street, Suite 3300, Houston, TX 77002 (Attn: Mitchell Ayer, Esq. and Steve Levitt, Esq.); (d) co-counsel to the Ad Hoc Group, (i) Kirkland & Ellis LLP, 601 Lexington Avenue, New York, NY 10022 (Attn: Brian Lennon, Esq. and Robert Britton, Esq.), (ii) White & Case LLP, 1155 Avenue of the Americas, New York, NY 10036 (Attn: Glenn M. Kurtz, Esq.), Southeast Financial Center, Suite 4900, 200 South Biscayne Boulevard, Miami, FL 33131 (Attn: Michael C. Shepherd, Esq. and Joseph A. Pack, Esq.), and (iii) Klehr Harrison Harvey Branzburg LLP, 919 N. Market Street, Suite 100, Wilmington, DE 19801 (Attn: Domenic E. Pacitti, Esq. and Michael Yurkewicz, Esq.); (e) counsel to the Agent, King & Spalding LLP, 1185 Avenue of the Americas, New York, NY 10036 (Attn: Michael C. Rupe, Esq.); and (f) the Office of the United States Trustee for the District of Delaware, 844 King Street, Suite 2207, Lockbox 35, Wilmington, DE 19801 (Attn: David L. Buchbinder, Esq. and Timothy J. Fox, Jr., Esq.).

12.    No later than three (3) business days after entry of this Order, the Selling Debtors (or the Wind Down Entity) shall cause a notice substantially in the form attached hereto as Schedule 2 (the "Notice of Auction and Sale Hearing") and a copy of this Order to be sent by first-class mail postage prepaid, to the following persons or entities: (a) counsel to the Ad Hoc Group; (b) counsel to the Agent; (c) all entities that assert any lien, claim or interest in the Assets; (d) all parties to the Executory Contracts and Unexpired Leases; (e) all governmental taxing authorities that have or as a result of the sale of the Assets may have claims, contingent or otherwise, against the Debtors; (f) all state and local taxing authorities having jurisdiction over any of the Assets, including the Internal Revenue Service; (g) the Environmental Protection Agency; (h) all parties that filed requests for notices under Bankruptcy Rule 9010(b) or were entitled to notice under Bankruptcy Rule 2002; (i) all interested governmental, pension, environmental and other regulatory entities; (j) the office of the attorneys general for the states in which the Debtors operate; (k) the Office of the United States Trustee for the District of Delaware; (l) the United States Department of Justice; (m) all entities that within the twelve months prior to the Petition Date expressed to the Debtors an interest in purchasing all or a substantial portion of the Assets; (n) counsel to the Stalking Horse Bidder and all other notice parties requested by the Stalking Horse Bidder.  In addition to the foregoing, (i) electronic notification of the Motion, this Order, and the Notice of Auction and Sale Hearing will also be posted on (A) the Court's website, http://www.deb.uscourts.gov and (B) the case website maintained by the Debtors' claims and noticing agent, Prime Clerk LLC, www.cases.primeclerk.com/herculesinfo; and (ii) no later than three (3) business days after entry of this Order, the Selling Debtors (or the Wind Down Entity) will, subject to applicable submission deadlines, publish the Notice of Auction and Sale Hearing in *The Wall Street Journal*

*(National Edition)* and the *Houston Chronicle*. **Failure to timely file an objection in accordance with this Order shall forever bar the assertion of any objection to the Motion, entry of the Sale Order, and/or consummation of the Sale, and shall be deemed to constitute consent to entry of the Sale Order and consummation of the Sale and all transactions related thereto**.

13.     No later than three (3) business days after entry of this Order (the "Cure Notice Deadline"), the Selling Debtors (or the Wind Down Entity) shall serve by first-class mail postage prepaid, a notice of potential assumption, assignment, and/or transfer of the executory contracts and unexpired leases to which any Selling Debtor is a party (collectively, the "Executory Contracts and Unexpired Leases"), substantially in the form attached hereto as Schedule 3 (the "Notice of Potential Assumption and Assignment"), on all non-Debtor parties to the Executory Contracts and Unexpired Leases.  The Notice of Potential Assumption and Assignment shall include the cure amounts (the "Cure Amounts") that the Selling Debtors believe must be paid to cure all defaults outstanding under the Executory Contracts and Unexpired Leases as of such date.

14.     Unless the non-Debtor party to an Executory Contract or Unexpired Lease files an objection to (a) its Cure Amount and/or (b) the proposed assumption, assignment and/or transfer of such Executory Contract or Unexpired Lease (including the transfer of any rights or benefits thereunder) to the Stalking Horse Bidder or to any other Successful Bidder, as applicable (each such objection, a "Cure Amount/Assignment Objection"), by January 3, 2017 at 4:00 p.m. (prevailing Eastern Time) (the "Cure Amount/Assignment Objection Deadline") and serves a copy of the Cure Amount/Assignment Objection so as to be *actually received* by the Objection Notice Parties by no later than the Cure Amount/Assignment Objection Deadline, such non-Debtor party

9

shall (x) be forever barred from objecting to the Cure Amount and from asserting against the Selling Debtors, the Wind Down Entity, or the Stalking Horse Bidder (or any other Successful Bidder) any additional cure or other amounts with respect to such Executory Contract or Unexpired Lease in the event that such Executory Contract or Unexpired Lease is ultimately assumed and/or assigned by the Selling Debtors, and the Selling Debtors and the Stalking Horse Bidder (or any other Successful Bidder) shall be entitled to rely solely upon the Cure Amount, and (y) be deemed to have consented to the assumption, assignment and/or transfer of such Executory Contract or Unexpired Lease (including the transfer of any rights and benefits thereunder) to the Stalking Horse Bidder, any other Successful Bidder, or any other assignee of the relevant Executory Contract or Unexpired Lease, and shall be forever barred and estopped from asserting or claiming against the Selling Debtors, the Wind Down Entity, the Stalking Horse Bidder, any other Successful Bidder, or any other assignee of the relevant Executory Contract or Unexpired Lease that any additional amounts are due or defaults exist, or conditions to assumption, assignment and/or transfer must be satisfied under such Executory Contract or Unexpired Lease, or that any right or benefit under such Executory Contract or Unexpired Lease cannot or will not be available to the Stalking Horse Bidder, any other Successful Bidder, or any other assignee of the relevant Executory Contract or Unexpired Lease.  All Cure Amount/Assignment Objections with respect to the Notice of Potential Assumption and Assignment served on or before the Cure Notice Deadline shall be heard at the Sale Hearing unless the Selling Debtors (or the Wind Down Entity), in consultation with the Stalking Horse Bidder or any other Successful Bidder, agree otherwise or the Court orders otherwise.  With respect to any party that has timely filed a Cure Amount/Assignment Objection in accordance with this Order, nothing in this Order and/or the Notice of Potential Assumption and Assignment shall (i) operate to waive or impair any rights,

10

claims, or defenses of any non-Debtor party to any Executory Contract or Unexpired Lease or (ii) be deemed to be a determination, finding, or adjudication that any Executory Contract or Unexpired Lease, or any rights or benefits thereunder, are or may be assumed, assigned, transferred, delegated, or otherwise made available for the benefit of any entity, pursuant to Bankruptcy Code section 365 or otherwise, without the consent of the non-Debtor counterparty to such Executory Contract or Unexpired Lease.

15. No later than five (5) calendar days prior to the Closing (as defined in the Stalking Horse Purchase Agreement) (the "Assignment Notice Deadline"), the Selling Debtors (or the Wind Down Entity) shall serve a notice, substantially in the form attached hereto as Schedule 4 (the "Assignment Notice"), identifying the Executory Contracts and Unexpired Leases that will be assumed and assigned to the Successful Bidder as of the Closing (collectively, the "Assigned Contracts and Assigned Leases"); provided, however, that if the Stalking Horse Bidder is the successful bidder, the Houma lease will be assumed and assigned effective five business days after Closing.

16. The Successful Bidder may determine to exclude any Executory Contract or Unexpired Lease (each an "Excluded Contract") from the list of Assets in accordance with the applicable asset purchase agreement. The Selling Debtors (or the Wind Down Entity) shall notify the non-Debtor party or parties to any Excluded Contract of such exclusion by written notice as soon as practicable after such determination, which may be after the Sale Hearing.

17. Within one (1) business day after the conclusion of the Auction, if any, the Selling Debtors (or the Wind Down Entity) shall serve the Successful Bidder Notice on all parties that received service of the Notice of Potential Assumption and Assignment.

18.     The Notice of the Auction and Sale Hearing, the Notice of Potential Assumption and Assignment, and the Assignment Notice, substantially in the forms attached hereto as Schedule 2, Schedule 3, and Schedule 4, respectively, are hereby approved.

19.     The Sale Hearing may be adjourned, from time to time, in accordance with the Bidding Procedures and without further notice to creditors or other parties in interest other than by announcement in open court or through the filing of a notice on this Court's docket.

20.     The Break-Up Fee and the Expense Reimbursement, as set forth in the Stalking Horse Purchase Agreement, are hereby approved, and the Selling Debtors (or the Wind Down Entity) are authorized and directed to promptly pay, as they become due, any amounts owed to the Stalking Horse Bidder on account of such Break-Up Fee and Expense Reimbursement in accordance with the Stalking Horse Purchase Agreement; provided, however, that notwithstanding anything to the contrary in the Motion, this Order, the Bidding Procedures or the Stalking Horse Purchase Agreement to the contrary, (a) the amount of the Break-Up Fee shall be $540,000, which amount is equal to three percent (3.0%) of the Purchase Price, and (b) the amount of the Expense Reimbursement shall not exceed $400,000.  The obligations of the Selling Debtors (or the Wind Down Entity) to pay the Break-Up Fee and the Expense Reimbursement (i) shall constitute administrative expense claims against each of the Selling Debtors' estates, (ii) shall be entitled to administrative expense priority status under Bankruptcy Code sections 503(b)(1)(A) and 507(a)(2), (iii) shall survive the termination of the Stalking Horse Purchase Agreement, and (iv) shall be paid by the Selling Debtors (or the Wind Down Entity) to the Stalking Horse Bidder in cash upon certain terminations of the Stalking Horse Purchase Agreement as set forth in Sections 2.4(a) and 2.4(b) thereof.  No subsequent order of the Court may modify the

requirement that such Break-Up Fee and Expense Reimbursement be paid pursuant to the terms of this Order.

21.    Except as otherwise provided in the Stalking Horse Purchase Agreement, the Bidding Procedures, or this Order, the Selling Debtors (and the Wind Down Entity) reserve their rights as they may reasonably determine to: (a) determine which Potential Bidders are Qualified Bidders; (b) determine which bids are Qualified Bids; (c) determine which Qualified Bid is the highest and best offer for the Assets and which Qualified Bid is the second-highest and best offer; (d) reject any bid that is (i) inadequate or insufficient, (ii) not in conformity with the requirements of the Bidding Procedures or the requirements of the Bankruptcy Code, or (iii) contrary to the best interests of the Selling Debtors (or the Wind Down Entity) and their estates; (e) waive terms and conditions set forth in the Bidding Procedures with respect to all Potential Bidders (after consultation with the Stalking Horse Bidder); (f) impose additional terms and conditions with respect to all Potential Bidders (after consultation with the Stalking Horse Bidder); (g) extend the deadlines set forth in the Bidding Procedures (after consultation with the Stalking Horse Bidder); (h) adjourn or cancel the Auction and/or Sale Hearing without further notice; and (i) modify the Bidding Procedures as they may determine to be in the best interests of their estates or to withdraw the Motion at any time with or without prejudice; *provided*, *further*, *however*, that all rights of all parties in interest to object to, or otherwise challenge the decisions of the Selling Debtors (or the Wind Down Entity) with respect to the Bidding Process are hereby reserved.

22.    The stays provided for in Bankruptcy Rules 6004(h) and 6006(d) and the requirements of Local Rule 6004-1(c)(2) are hereby waived, and this Order shall be effective immediately upon its entry.

23.     This Court shall retain jurisdiction over any matters related to or arising from the interpretation or implementation of this Order.


Dated: _____, 2016
          Wilmington, Delaware

                                        _____
                                        THE HONORABLE KEVIN J. CAREY
                                        UNITED STATES BANKRUPTCY JUDGE

14

# **SCHEDULE 1**

BIDDING PROCEDURES

## BIDDING PROCEDURES

On June 5, 2016 (the "Petition Date"), Hercules Offshore, Inc. and its affiliated debtors and debtors in possession (collectively, the "Debtors") each filed voluntary petitions for relief under title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court"). By a motion dated November [  ], 2016 (the "Motion"), the Debtors sought, among other things, approval of the procedures related to the proposed sale of the Assets (as defined in the Stalking Horse Purchase Agreement (as defined below)). On [_____], 2016, the Bankruptcy Court entered an order (the "Bidding Procedures Order") authorizing the Selling Debtors[1] (or the liquidating trust to be established pursuant to the terms of the *Debtors' Modified Joint Prepackaged Chapter 11 Plan,* the "Wind Down Entity") to market the Assets through, among other means, the bidding procedures described below (these "Bidding Procedures"). As part of the Bidding Procedures, the Bankruptcy Court has scheduled a hearing to consider approval of the sale of the Assets to the Successful Bidder (as defined below), to be conducted on [_____], 2016 at [_____]January 18, 2017 at 10:00 a.m. (prevailing Eastern Time), at the Bankruptcy Court before the Honorable Kevin J. Carey (the "Sale Hearing"). Please note that all capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Stalking Horse Purchase Agreement.

## I.  Stalking Horse Bid

The Selling Debtors have executed a Purchase and Sale Agreement (collectively with all ancillary documents and agreements, the "Stalking Horse Purchase Agreement") with Enterprise Offshore Drilling LLC, as Buyer (the "Stalking Horse Bidder"), dated as of November 18, 2016, which contemplates a set of related transactions (collectively, the "Sale Transaction") providing for the sale of the Assets to the Stalking Horse Bidder in consideration for the Purchase Price (as defined in the Stalking Horse Purchase Agreement) in accordance with the terms and subject to the conditions set forth in the Stalking Horse Purchase Agreement.

## II.  Important Dates for Potential Competing Bidders

These Bidding Procedures provide an opportunity for interested parties to qualify for and participate in the Auction (as defined below) and to submit competing bids for the Assets. The Selling Debtors, or the Wind Down Entity, as applicable, shall:

(a)      accept bids until the Bid Deadline (as defined below); and

(b)      assist Potential Bidders (as defined below) in conducting their respective due diligence investigations until the Bid Deadline and, on January 12, 2017, conduct an auction (the "Auction") among Qualified Bidders, provided that the Selling

---

[1] The Selling Debtors are comprised of the following Debtor entities: (i) Hercules Offshore Services LLC; (ii) Hercules Drilling Company LL; (iii) TODCO Americas Inc.; (iv) Cliffs Drilling Company; (v) THE Offshore Drilling Company; and (vi) SD Drilling LLC.

Debtors (or the Wind Down Entity) receive more than one Qualified Bid, to identify the Successful Bid (each as defined below).

## III. Assets to Be Sold

The Selling Debtors (or the Wind Down Entity) seek to sell the "Assets" as set forth in Section 1 of the Stalking Horse Purchase Agreement, to the maximum extent permitted by Bankruptcy Code section 363, including such Assigned Contracts and Assigned Leases (as such terms are defined in the Bidding Procedures Order) as any Qualified Bidder may seek to purchase at the Auction, free and clear of any and all Claims (as defined below) but subject to certain conditions.

## IV. The Bidding Process

The Selling Debtors (or the Wind Down Entity) shall: (a) coordinate the efforts of Potential Bidders in conducting their respective due diligence investigations with respect to the Assets; (b) determine whether any person or entity is a Qualified Bidder; (c) receive and evaluate bids from Qualified Bidders; and (d) administer the Auction.  The foregoing activities are collectively referred to as the "Bidding Process."  Neither the Selling Debtors (or the Wind Down Entity) nor their representatives shall be obligated to furnish information of any kind whatsoever to any person or entity that is not a Potential Bidder (or legal counsel or financial advisor to a Potential Bidder), and the Selling Debtors (or the Wind Down Entity) and their representatives shall use good faith efforts to provide substantially similar access and information to all Potential Bidders.  Except as set forth in the Bidding Procedures Order and herein, the Selling Debtors (or the Wind Down Entity) may conduct the Bidding Process in their sole discretion; *provided, however*, that all rights of all parties in interest to object to, or otherwise challenge, the decisions of the Selling Debtors (or the Wind Down Entity) with respect to the Bidding Process are hereby reserved.

Any person or entity that wishes to participate in the Bidding Process must meet the participation requirements for Potential Bidders set forth below and must timely submit a Qualified Bid in order to become a Qualified Bidder that can participate in the Auction.

## V.  Participation Requirements

To participate in the Bidding Process, each interested person or entity must deliver the following documents (collectively, the "Participation Materials") to the parties set forth below at least two (2) calendar days before the Bid Deadline:

(a)     an executed confidentiality agreement in form and substance satisfactory to the Selling Debtors (or the Wind Down Entity);

(b)     a statement demonstrating to the Selling Debtors' (or the Wind Down Entity's) satisfaction a *bona fide* interest in purchasing the Assets from the Selling Debtors (or the Wind Down Entity); and

(c)     information satisfactory to the Selling Debtors (or the Wind Down Entity) that the Potential Bidder has the financial wherewithal to satisfy adequate assurance requirements of the Bankruptcy Code with respect to the Assigned Contracts and Assigned Leases, and to consummate the Sale Transaction.

The Stalking Horse Bidder shall not be required to provide any of the materials referenced above.

The Participation Materials must be transmitted to each of the following parties (collectively, the "Notice Parties"): (a) the Selling Debtors (or the Wind Down Entity), c/o Hercules Offshore, Inc., 9 Greenway Plaza, Ste 2200, Houston, TX 77046 (Attn: Troy L. Carson and Beau Thompson); (b) co-counsel to the Debtors, (i) Akin Gump Strauss Hauer & Feld LLP, One Bryant Park, New York, NY 10036 (Attn: Michael S. Stamer, Esq., Philip C. Dublin, Esq. and Stephen B. Kuhn, Esq.) and (ii) Morris, Nichols, Arsht & Tunnell LLP, 1201 N. Market St., 16th Flr., Wilmington, DE 19899 (Attn: Eric D. Schwartz and Matthew B. Harvey, Esq.); and (c) the Debtors' broker, Mitchen Anderson Group, LLC, 19500 State Hwy 249, Suite 275, Houston, TX 77070 (Attn: James P. Mitchen).

Any party that timely delivers the Participation Materials to the Notice Parties may be a "Potential Bidder," and by timely delivering the Participation Materials to the Notice Parties each Potential Bidder acknowledges that its identity shall be made public, including in the Selling Debtors' (or the Wind Down Entity's) filings with the Bankruptcy Court. If the Selling Debtors (or the Wind Down Entity) determine that a Potential Bidder has a *bona fide* interest in the Assets, then the Selling Debtors (or the Wind Down Entity) shall, promptly after such determination, (a) deliver to the Potential Bidder an electronic copy of the Stalking Horse Purchase Agreement and (b) provide any additional information as may be reasonably requested and as is determined to be appropriate under the circumstances via a confidential data room or other means deemed reasonably appropriate under the circumstances by the Selling Debtors (or the Wind Down Entity).

No Potential Bidder shall consult with any other Potential Bidder following delivery of the Participation Materials and before the conclusion of the Auction, or submit at any time a "joint bid" with any other Potential Bidder, without the written consent of the Selling Debtors (or the Wind Down Entity).

## VI. Due Diligence

Until the Bid Deadline, the Selling Debtors (or the Wind Down Entity) will afford any Potential Bidder such due diligence access or additional information as may be reasonably requested by the Potential Bidder that the Selling Debtors (or the Wind Down Entity) determine in their discretion to be reasonable and appropriate under the circumstances. All due diligence requests shall be directed to the financial advisors to the Selling Debtors (or to the Wind Down Entity), as indicated above.  The Selling Debtors (or the Wind Down Entity) shall coordinate all reasonable requests for additional information and due diligence access from Potential Bidders.  If the Selling Debtors (or the Wind Down Entity) determine that due diligence material requested by a Potential Bidder is reasonable and appropriate under the circumstances, but such material has not previously been provided to any other Potential Bidder or to the Stalking Horse Bidder, then

the Selling Debtors (or the Wind Down Entity) shall share such materials via a confidential data room or other means deemed reasonably appropriate under the circumstances by the Selling Debtors (or the Wind Down Entity) with all Potential Bidders and the Stalking Horse Bidder.

Except as provided above with respect to the copy of the Stalking Horse Purchase Agreement provided by the Selling Debtors (or the Wind Down Entity) to the Potential Bidders, neither the Selling Debtors (or the Wind Down Entity) nor their representatives shall be obligated to furnish any information of any kind whatsoever relating to the Assets or to any party.

## VII.  <u>Bid Deadline</u>

A Potential Bidder that desires to submit a bid for the Assets shall deliver written and electronic copies of its bid to the Notice Parties so as to be received not later than 5:00 p.m. (prevailing Eastern Time) on January 9, 2017 (the "<u>Bid Deadline</u>").  Any bids submitted by a Potential Bidder must comply with the requirements set forth below.

## VIII.  <u>Bid Requirements</u>

To participate in the Auction, if any, a bidder must deliver to the Notice Parties a written offer, which, to be deemed a "Qualified Bid," must, at a minimum, provide for or otherwise comply with the following requirements:

(a)  The bid must be a bulk bid to purchase all of the assets constituting the Assets from the Selling Debtors (or the Wind Down Entity) at the purchase price and upon the terms and conditions set forth in an executed purchase agreement, a clean copy of which shall be submitted, together with a marked copy showing any proposed changes to the Stalking Horse Purchase Agreement.

(b)  The bid must not be subject to any due diligence or financing contingency, must not be conditioned on bid protections or any expense reimbursement, must not be subject to any corporate (board, shareholder, or similar) consent or approval, or any regulatory contingencies (other than a condition that any applicable waiting period required for any regulatory approval shall have expired or have been terminated and required authorization of any other governmental entity whose approval is identified in the bid as required for the transaction as set forth in such Potential Bidder's bid shall have been obtained, and any other regulatory contingencies set forth in the Stalking Horse Purchase Agreement have been satisfied).  Any required governmental approvals identified in the bid may impact the evaluation of whether the bid is a Qualified Bid and shall be taken into account in the Selling Debtors' (or the Wind Down Entity's) determination of the highest and best bid for the Assets.

(c)  The purchase price in such bid must be a higher and better offer as compared to the offer of the Stalking Horse Bidder.  Such offer shall not be considered a Qualified Bid unless such bid provides for (i) consideration equal to the Purchase Price in the Stalking Horse Purchase Agreement, including an amount of cash equal to the Cash Consideration in the Stalking Horse Purchase Agreement, <u>plus</u>

(ii) an amount of cash equal to the Break-Up Fee, plus (iii) an amount of cash equal to the Expense Reimbursement, plus (iv) an amount of cash equal to $500,000.

(d)     The Selling Debtors (or the Wind Down Entity) must receive the bid by the Bid Deadline.

(e)     The bid must not entitle the Potential Bidder to any break-up fee, termination fee, or similar type of payment or reimbursement and, by submitting a bid, the Potential Bidder waives the right to pursue a substantial contribution claim under 11 U.S.C. § 503 related in any way to the submission of its bid or the Bidding Process.

(f)     The bid must be accompanied by a cash deposit in the amount of ten percent (10%) of the purchase price of the bid (the "Deposit").

(g)     The bid must include a comprehensive list of all executory contracts and unexpired leases that the Potential Bidder seeks to take assignment of.

A Potential Bidder shall accompany its bid with each of the following: (a) written evidence of available cash, a commitment for financing or ability to obtain a satisfactory commitment if selected as the Successful Bidder, or such other evidence of ability to consummate the sale of the Assets as the Selling Debtors (or the Wind Down Entity) may request; (b) a copy of a board resolution or similar document demonstrating the authority of the Potential Bidder to make a binding and irrevocable bid on the terms proposed; and (c) any pertinent factual information regarding the Potential Bidder's operations that would assist the Selling Debtors (or the Wind Down Entity) in their analysis of issues arising with respect to any applicable antitrust laws, governmental regulatory approvals, national security laws, foreign investment laws, or other aspects of the bid and with respect to any conditions contained in the bid.

The Selling Debtors (or the Wind Down Entity) will only consider a bid received from a Potential Bidder if it meets the requirements set forth above (with such variations as the Selling Debtors (or the Wind Down Entity) shall permit in accordance with the terms of the Bidding Procedures Order and these Bidding Procedures), and shall constitute a "Qualified Bid" only if the Selling Debtors (or the Wind Down Entity) believe in their discretion that such bid would be consummated if selected as the Successful Bid. Each Potential Bidder that the Selling Debtors (or the Wind Down Entity) determine to have submitted a Qualified Bid will be considered a "Qualified Bidder." For purposes hereof, the Stalking Horse Bidder is a Qualified Bidder, and the Stalking Horse Purchase Agreement executed by the Stalking Horse Bidder is a Qualified Bid. A Qualified Bid will be valued by the Selling Debtors (or the Wind Down Entity) based upon factors such as: (a) the purported amount of the Qualified Bid, including any benefit to the Selling Debtors' bankruptcy estates (or Wind Down Entity) from any assumption of liabilities of the Selling Debtors; (b) the fair value to be provided under the Qualified Bid; (c) the length of time expected to close the proposed purchase of the Assets; (d) the ability of the Potential Bidder to obtain all necessary antitrust, governmental, national security, foreign investment, or other regulatory approvals for the proposed purchase of the Assets; and (e) any other factors the Selling Debtors (or the Wind Down Entity) may deem relevant. Within one (1) calendar day after the Selling Debtors (or the Wind Down Entity) determine that a bid is a Qualified Bid, the Selling

Debtors (or the Wind Down Entity) shall distribute a copy of such bid to counsel to the Stalking Horse Bidder by e-mail, hand delivery, or overnight courier.  The Selling Debtors (or the Wind Down Entity) may reject any bid if, among other things, the Selling Debtors (or the Wind Down Entity) determine such bid is on terms that are in their totality materially more burdensome or conditional than the terms of the Stalking Horse Purchase Agreement.

Any bid rejected pursuant to this Section VIII shall not be deemed to be a Qualified Bid. Only Qualified Bidders that have submitted Qualified Bids will be invited to participate in the Auction.

## IX. **The Auction**

In the event that there is timely delivered one or more Qualified Bids (other than the bid of the Stalking Horse Bidder), the Selling Debtors (or the Wind Down Entity) will hold the Auction on January 12, 2017, commencing at 10:00 a.m. (prevailing Eastern Time) at the offices of Akin Gump Strauss Hauer & Feld LLP, 1111 Louisiana Street, 44th Floor, Houston, Texas, 77002, or at such other location as the Selling Debtors (or the Wind Down Entity) may hereafter designate (with notice of such alternate location given to all Qualified Bidders under the Bidding Procedures for consideration of the Qualified Bids, each as may be increased at such Auction.  Bidding will start at the amount of the highest Qualified Bid and will continue with minimum bid increments of $250,000, subject to the right of the Stalking Horse Bidder to credit the Break-Up Fee and Expense Reimbursement to its bid at each round of bidding.  The Auction shall be conducted in accordance with the following procedures:

(a)     Only the Selling Debtors (or the Wind Down Entity) and their representatives, the Stalking Horse Bidder and its representatives, the United States Trustee and its representatives, ~~and~~ any other Qualified Bidder that has timely submitted a Qualified Bid and any creditor that notifies the Selling Debtors (or the Wind Down Entity) of its intent to attend the Auction by no later than January 9, 2017 at 5:00 p.m. (ET), shall be permitted to attend the Auction in person, and only the Stalking Horse Bidder and other Qualified Bidders shall be entitled to make any Subsequent Bids (as defined below) at the Auction.

(b)     Each Qualified Bidder shall be required to confirm that it has not engaged in any impermissible collusion, including as set forth in Section V above and Section IX(g) below, with respect to the bidding on, or the sale of, the Assets.

(c)     At least one (1) Business Day (as defined in the Stalking Horse Purchase Agreement) prior to the Auction, each Qualified Bidder who has timely submitted a Qualified Bid must inform the Selling Debtors (or the Wind Down Entity) whether it intends to attend the Auction; *provided*, *however*, that if a Qualified Bidder elects not to attend the Auction, such Qualified Bidder's Qualified Bid shall nevertheless remain fully enforceable against such Qualified Bidder until the date of the selection of the Successful Bidder and the Back-Up Bidder (each as defined below).  Prior to the commencement of the Auction, the Selling Debtors (or the Wind Down Entity) shall provide notice to each Qualified Bidder of (i) the Qualified Bid that the Selling Debtors (or the Wind Down Entity) believe, in their

reasonable business judgment is the highest and best offer for the Assets (the "Starting Bid") and (ii) the identities of each other Qualified Bidder that has informed the Selling Debtors (or the Wind Down Entity) of its intent to participate in the Auction.

(d)     All Qualified Bidders who have timely submitted Qualified Bids will be entitled to be present for all Subsequent Bids at the Auction with all material terms of each Subsequent Bid being fully disclosed to all other bidders throughout the entire Auction; *provided*, *however*, that all Qualified Bidders wishing to attend the Auction must have at least one individual representative with authority to bind such Qualified Bidder attending the Auction in person.  All proceedings at the Auction shall be conducted before and transcribed by a court stenographer.

(e)     After consultation with the Stalking Horse Bidder, the Selling Debtors (or the Wind Down Entity) may employ and announce at the Auction additional procedural rules that are reasonable under the circumstances for conducting the Auction in the Selling Debtors' (or the Wind Down Entity's) discretion; *provided*, *however*, that such rules are (i) not inconsistent with these Bidding Procedures, the Bankruptcy Code, or any order of the Bankruptcy Court or any other applicable court entered in connection herewith and (ii) disclosed to each Qualified Bidder at the Auction.

(f)     The Selling Debtors (and the Wind Down Entity) reserve their right to make one or more adjournments of the Auction to, among other things: (i) facilitate discussions between the Selling Debtors (or the Wind Down Entity) and the Qualified Bidders, (ii) allow individual Qualified Bidders to determine how they wish to proceed, (iii) consider and determine the current highest and best Subsequent Bid at any given time during the Auction, (iv) afford Qualified Bidders the opportunity to provide the Selling Debtors (or the Wind Down Entity) with such additional evidence as the Selling Debtors (or the Wind Down Entity), in their reasonable business judgment, may require that the Qualified Bidder (other than the Stalking Horse Bidder) has sufficient internal resources, or has received sufficient non-contingent debt and/or equity funding commitments to consummate the proposed transaction at the prevailing Subsequent Bid amount.

(g)     No Qualified Bidder shall consult with any other Qualified Bidder prior to the conclusion of the Auction, or submit at any time a "joint bid" with any other Qualified Bidder, without the express consent of the Selling Debtors (or the Wind Down Entity).

(h)     Bidding at the Auction will begin with the Starting Bid and continue, in one or more rounds of bidding, so long as during each round at least one bid is submitted by a Qualified Bidder that (i) improves upon such Qualified Bidder's immediately prior Qualified Bid (each a "Subsequent Bid") and (ii) the Selling Debtors (or the Wind Down Entity) determine is (a) for the first round, a higher and better offer than the Starting Bid, and (b) for subsequent rounds, a higher and better offer than the Leading Bid (as defined below).  Each Subsequent Bid at the Auction shall

provide net value of at least U.S. $250,000 over the Starting Bid or the Leading Bid (as defined below), as the case may be, with respect to the Assets. After the first round of bidding and between each subsequent round of bidding, the Selling Debtors (or the Wind Down Entity) shall announce the bid that they believe to be the highest and best offer (each a "Leading Bid"). A round of bidding will conclude after each participating Qualified Bidder has had the opportunity to submit a Subsequent Bid with full knowledge of the Leading Bid. Except as specifically set forth herein, for the purpose of evaluating the value of the consideration provided by any Subsequent Bid (including any Subsequent Bid by the Stalking Horse Bidder), the Selling Debtors (or the Wind Down Entity) will, at each round of bidding, give effect to the Break-Up Fee and the Expense Reimbursement that may be payable to the Stalking Horse Bidder under the Stalking Horse Purchase Agreement and take into account any additional liabilities to be assumed by a Qualified Bidder and any additional costs which may be imposed on the Debtors by such Qualified Bid in the Selling Debtors' (or the Wind Down Entity) discretion.

## X.  Credit Bidding

No party shall be permitted or entitled to credit bid any obligation or alleged obligation of the Debtors or any affiliate or subsidiary of the Debtors, except the Stalking Horse Bidder may credit bid the Break-Up Fee and Expense Reimbursement at the Auction.

## XI. The Successful Bid

Immediately at the conclusion of the Auction, the Selling Debtors (or the Wind Down Entity) shall (a) determine, consistent with the Bidding Procedures, which bid constitutes the highest and best bid (such bid, the "Successful Bid," and the bidder making such bid, the "Successful Bidder") and (b) communicate to the Stalking Horse Bidder and the other Qualified Bidders the identity of the Successful Bidder and the details of the Successful Bid. At such time, the Selling Debtors (or the Wind Down Entity) shall also determine which bid constitutes the second-highest and best bid, and may, subject to the terms hereof, deem such second-highest and best bid a back-up bid (such bid, the "Back-Up Bid" and the party submitting the Back-Up Bid, the "Back-Up Bidder") and communicate to the Stalking Horse Bidder and other Qualified Bidders the identity of the Back-Up Bidder and the details of the Back-Up Bid. Within one (1) Business Day of determining the Successful Bid, the Selling Debtors (or the Wind Down Entity) shall file on the Bankruptcy Court's public docket a notice disclosing the identity of the Successful Bidder and the identity of the Back-Up Bidder if any (the "Successful Bidder Notice"). The Stalking Horse Bidder shall only serve as the Back-Up Bidder with the consent of the Stalking Horse Bidder in its sole and absolute discretion; *provided*, *however*, that if the Stalking Horse Bidder submits a Subsequent Bid for the Assets, the Selling Debtors (or the Wind Down Entity) may deem such Subsequent Bid the Back-Up Bid and the Stalking Horse Bidder the Back-Up Bidder; *provided, further, however,* that the Stalking Horse Bidder reserves the right to structure any Subsequent Bid to contain such terms or conditions as the Stalking Horse Bidder deems appropriate, and the Selling Debtors (and the Wind Down Entity) reserve the right to evaluate such bid in accordance with Section IX(h) of these Bidding Procedures.

If no Qualified Bids are received for the Assets other than the Stalking Horse Purchase Agreement, then the Stalking Horse Purchase Agreement shall be designated as the Successful Bid, there shall be no Auction, and the Selling Debtors (or the Wind Down Entity) shall seek approval of the sale of the Assets to the Stalking Horse Bidder in accordance with the Stalking Horse Purchase Agreement at the Sale Hearing.  The determination of the Successful Bid and the Back-Up Bid by the Selling Debtors (or the Wind Down Entity) at the conclusion of the Auction shall be final, subject to approval by the Bankruptcy Court.  If the Successful Bid is terminated or fails to close within the time period specified in the Successful Bid, the Selling Debtors (or the Wind Down Entity) shall be authorized, but are not required, to consummate the Sale Transaction with the Back-Up Bidder without further order of the Bankruptcy Court.  The Back-Up Bid shall remain open until the earlier of (x) the first Business Day following the consummation of the Sale Transaction and (y) the ninetieth (90th) calendar day after entry of the Sale Order; *provided, however,* that if the Stalking Horse Bidder consents to serve as the Back-Up Bidder with respect to the Stalking Horse Purchase Agreement, the terms of the Stalking Horse Purchase Agreement shall control the time period during which the Back-Up Bid will remain open.  The Selling Debtors (or the Wind Down Entity) shall be deemed to have accepted a Qualified Bid only when (i) such bid is declared to be the Successful Bid at the Auction; (ii) definitive documentation has been executed in respect thereof; and (iii) the Bankruptcy Court has entered an order approving such Successful Bid; *provided*, *however*, that under no circumstances shall the Selling Debtors (or the Wind Down Entity) consider any bid made after the conclusion of the Auction, unless otherwise determined by the Bankruptcy Court.

EACH QUALIFIED BID SUBMITTED (OTHER THAN THE STALKING HORSE PURCHASE AGREEMENT, WHICH MAY BE TERMINATED IN ACCORDANCE WITH ITS TERMS) SHALL CONSTITUTE AN IRREVOCABLE OFFER AND BE BINDING UPON THE APPLICABLE QUALIFIED BIDDER FROM THE TIME THE BID IS SUBMITTED UNTIL THE ENTRY OF THE SALE ORDER.   THE BACK-UP BID SHALL BE IRREVOCABLE AND BINDING UPON THE BACK-UP BIDDER UNTIL THE EARLIER OF ONE (1) BUSINESS DAY AFTER THE CLOSING OF THE SALE OF THE ASSETS OR NINETY (90) DAYS AFTER THE SALE ORDER IS ENTERED. ALL QUALIFIED BIDDERS AT THE AUCTION SHALL BE DEEMED TO HAVE CONSENTED TO THE JURISDICTION OF THE BANKRUPTCY COURT AND WAIVED ANY RIGHT TO A JURY TRIAL IN CONNECTION WITH ANY DISPUTES RELATING TO THE AUCTION AND THE CONSTRUCTION AND ENFORCEMENT OF ANY SALE TRANSACTION DOCUMENTS.

## XII.    The Sale Hearing

The Successful Bid for the Assets will be presented to the Bankruptcy Court for approval at the Sale Hearing.  If no other Qualified Bid is received by the Selling Debtors (or the Wind Down Entity) and the Stalking Horse Bidder's original Stalking Horse Purchase Agreement is the Successful Bid, then the Selling Debtors (or the Wind Down Entity) will seek entry of an order at the Sale Hearing authorizing and approving the Sale Transaction (the "Sale Order"), including the sale of the Assets to the Stalking Horse Bidder, pursuant to the terms and conditions of the Stalking Horse Purchase Agreement.  If a different bid is the Successful Bid, then the Selling Debtors (or the Wind Down Entity) anticipate that they will seek entry of an order, modified as

necessary to reflect the terms of the Successful Bid, authorizing and approving the sale of the Assets to the Successful Bidder. Unless the Bankruptcy Court orders otherwise, the Sale Hearing shall be an evidentiary hearing on all matters relating to the proposed sale, and parties shall be prepared to present their evidence in support of or in opposition to the proposed sale at the Sale Hearing; *provided*, *however*, that issues relating to the assumption and assignment of executory contracts and unexpired leases may be addressed at one or more separate hearings before the Bankruptcy Court.

## XIII.    <u>"As Is Where Is"</u>

The Sale Transaction shall be on an "as is, where is" basis and without indemnification or representations or warranties of any kind, nature or description by the Selling Debtors (or the Wind Down Entity), their agents, or their estates, except for representations and warranties expressly set forth in the purchase agreement corresponding to the Successful Bid (none of which shall survive the closing of the Sale). Except as otherwise provided in the Successful Bid or such other bid which may ultimately be consummated, all of the Selling Debtors' (or the Wind Down Entity's) right, title and interest in and to the Assets shall be sold free and clear all liens, claims (as such term is defined by Bankruptcy Code section 101(5)), encumbrances, rights, remedies, restrictions, interests, liabilities, leasehold interests, and contractual commitments of any kind or nature whatsoever, whether arising before or after the Petition Date, whether at law or in equity, including, without limitation, all rights or claims based on any successor or transferee liability, all environmental claims, all change in control provisions, all rights to object or consent to the effectiveness of the transfer of the Assets, all as more specifically set forth and defined in the Motion and the proposed order approving the Sale Transaction (collectively, the "<u>Claims</u>"), and as set forth in the Stalking Horse Purchase Agreement and the Sale Order, with such Claims to attach to the net proceeds of the sale with the same validity and priority as such Claims applied against the Assets. The Stalking Horse Bidder and each Qualified Bidder shall be deemed to acknowledge and represent that it had an opportunity to conduct any and all due diligence regarding the Assets prior to making its offer, that it has relied solely on its own independent review, investigation, and/or inspection of any documents and/or the Assets in making its Qualified Bid, and that it did not rely on any written or oral statements, representations, promises, warranties, or guaranties (or omissions from any thereof) whatsoever, whether express, implied, by operation of law or otherwise regarding the Assets, or the accuracy or completeness of any information provided in connection therewith or the Auction except as expressly stated in these Bidding Procedures, and (a) as to the Stalking Horse Bidder, the terms of the sale of the Assets set forth in the Stalking Horse Purchase Agreement, or (b) as to any other Successful Bidder, the terms of the sale of the Assets set forth in the applicable purchase agreement. Notwithstanding the foregoing, the Debtors (and the Wind Down Entity) reserve the right to contest the validity, nature, extent, or priority of and/or seek to set aside or avoid any and all Claims under applicable law.

## XIV.    <u>Return of Deposits</u>

The Deposit submitted by the Back-Up Bidder (other than the Stalking Horse Bidder if (i) the Stalking Horse Bidder submits a Subsequent Bid that is selected as the Back-Up Bid or (ii) consents to serve as the Back-Up Bidder) will be held by the Selling Debtors (or the Wind Down Entity) until forty-eight (48) hours after the Back-Up Bid has been terminated in accordance with

the Bidding Procedures.   As to all other bidders (except for the Successful Bidder and the Stalking Horse Bidder whose Deposit will be returned in accordance with the terms of the Stalking Horse Purchase Agreement), Deposits will be returned promptly after conclusion of the Sale Hearing.   Other than with respect to the Deposit of the Stalking Horse Bidder, which shall be governed solely by the terms of the Stalking Horse Purchase Agreement, if the Successful Bidder or the Back-Up Bidder fails to consummate an approved sale because of a breach or failure to perform on the part of the Successful Bidder or the Back-Up Bidder, the Selling Debtors (or the Wind Down Entity) shall be entitled to retain the Deposit in partial satisfaction of any damages resulting from the breach or failure to perform by the Successful Bidder or the Back-Up Bidder, without prejudice to any other rights the Selling Debtors (or the Wind Down Entity) may have. The Selling Debtors (or the Wind Down Entity) may credit the Deposit of the Successful Bidder or the Back-Up Bidder toward the purchase price on the closing of the sale of the Assets.

## XV.   **Reservation of Rights**

Except as otherwise provided in the Bidding Procedures Order, the Selling Debtors (and the Wind Down Entity) reserve the right to: (a) determine which Potential Bidders are Qualified Bidders; (b) determine which bids are Qualified Bids; (c) determine which Qualified Bid is the highest and best offer for the Assets and which is the second-highest and best offer; (d) reject any bid that is (i) inadequate or insufficient, (ii) not in conformity with the requirements of the Bidding Procedures or the requirements of the Bankruptcy Code, or (iii) contrary to the best interests of the Selling Debtors and their estates (or the Wind Down Entity); (e) waive terms and conditions set forth herein with respect to all Potential Bidders (after consultation with the Stalking Horse Bidder); (f) impose additional terms and conditions with respect to all Potential Bidders (after consultation with the Stalking Horse Bidder); (g) extend the deadlines set forth herein (after consultation with the Stalking Horse Bidder); (h) adjourn or cancel the Auction and/or Sale Hearing without further notice; and (i) modify the Bidding Procedures as they may determine to be in the best interests of their estates or to withdraw the Motion at any time with or without prejudice; *provided*, *however*, that notwithstanding the foregoing, without the consent of the Stalking Horse Bidder, which consent shall not be unreasonably withheld, the Selling Debtors (or the Wind Down Entity) may not (1) withdraw the Motion, (2) adjourn or cancel the Sale Hearing, (3) waive any conditions to a bidder being a Qualified Bidder or a bid being a Qualified Bid as set forth in the Bidding Procedures; (4) remove any of the Assets from the Auction; (5) extend the time period within which the Selling Debtors (or the Wind Down Entity) are required to file the Successful Bidder Notice; or (6) modify the Bidding Procedures' requirements (A) that any bid be a bulk bid to purchase all of the Assets, (B) to change the amount of the Deposit, (C) to waive or modify any of the provisions in the Credit Bidding section of the Bidding Procedures, or (D) to impair or modify the Stalking Horse Bidder's rights and obligations under the Bidding Procedures or the Stalking Horse Purchase Agreement, including, without limitation, the Stalking Horse Bidder's rights with respect to the timing of the Auction and the Sale Hearing or the Stalking Horse Bidder's right to receive a "credit" in the amount of its Break-Up Fee and Expense Reimbursement toward any Subsequent Bid at the Auction.

*[Remainder of Page Intentionally Left Blank]*

## **SCHEDULE 2**

NOTICE OF AUCTION AND SALE HEARING

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| HERCULES OFFSHORE, INC., *et al*. | ) Case No. 16-11385 (KJC) |
| | ) |
| | ) (Jointly Administered) |
| Debtors.[1] | ) |
| | ) **Sale Hearing Date: [____], 2016 at [____] (ET)** |
| | ) **Objection Deadline [____], 2016 at [____] (ET)** |
| | ) |
| | ) |

## NOTICE OF PUBLIC AUCTION AND SALE HEARING

### ("*Sale Notice*")

**PLEASE TAKE NOTICE** that certain of the above-captioned debtors and debtors in possession (collectively, the "Debtors"), as Selling Debtors,[2] have entered into an asset purchase agreement, dated November 18, 2016 (the "Stalking Horse Purchase Agreement"), with Enterprise Offshore Drilling LLC, as Buyer (the "Stalking Horse Bidder"), to sell the Selling Debtors' GOM Fleet and related assets free and clear of all liens, claims, encumbrances and other interests to the Stalking Horse Bidder (the "Sale"), subject to the submission of higher or better offers in an auction process (the "Auction").

**PLEASE TAKE FURTHER NOTICE** that in connection with the proposed Sale, on [____], 2016, the Debtors filed a motion [Docket No. ___] (the "Motion") seeking court orders for the approval and authorization of, among other things, (a) the Sale, (b) bidding procedures in connection with the Sale, (c) the payment to the Stalking Horse Bidder, if necessary, of a Break-Up Fee and Expense Reimbursement, (d) the form and manner of notices relating to the Sale, and (e) procedures related to the assumption and assignment of executory contracts and unexpired leases in connection with the Sale.

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Cliffs Drilling Company (8934); Cliffs Drilling Trinidad L.L.C. (5205); FDT LLC (7581); FDT Holdings LLC (4277); Hercules Drilling Company, LLC (2771); Hercules Offshore, Inc. (2838); Hercules Offshore Services LLC (1670); Hercules Offshore Liftboat Company LLC (5303); HERO Holdings, Inc. (5475); SD Drilling LLC (8190); THE Offshore Drilling Company (4465); THE Onshore Drilling Company (1072); TODCO Americas Inc. (0289); and TODCO International Inc. (0326). The Debtors' corporate headquarters are located at, and the mailing address for each Debtor is, 9 Greenway Plaza, Suite 2200, Houston, TX 77046.

[2] The Selling Debtors are comprised of the following Debtor entities: (i) Hercules Offshore Services LLC; (ii) Hercules Drilling Company LL; (iii) TODCO Americas Inc.; (iv) Cliffs Drilling Company; (v) THE Offshore Drilling Company; and (vi) SD Drilling LLC.

PLEASE TAKE FURTHER NOTICE that, on [_____], 2016, the United States Bankruptcy Court for the District of Delaware (the "Court") entered an order [Docket No. __] (the "Bidding Procedures Order") approving the bidding procedures (the "Bidding Procedures"), which establish the key dates and times related to the Sale. All interested bidders should carefully read the Bidding Procedures Order and the Bidding Procedures. The summary of the Bidding Procedures contained in this Sale Notice is provided for convenience only. To the extent that there are any inconsistencies between the Bidding Procedures and the summary description in this Sale Notice, the terms of the Bidding Procedures shall control. The deadline by which all Qualified Bids (as defined in the Bidding Procedures) must be *actually* *received* by the parties specified in the Bidding Procedures Order is [_____], 2016 at [_____] (prevailing Eastern Time).

PLEASE TAKE FURTHER NOTICE that copies of the Motion, Bidding Procedures and Bidding Procedures Order, as well as all related exhibits including the Stalking Horse Purchase Agreement, are available on the website of the Court-appointed claims and noticing agent for the Debtors' chapter 11 cases, Prime Clerk LLC, https://cases.primeclerk.com/herculesinfo/, or can be requested by e-mail at herculesinfo@PrimeClerk.com.

PLEASE TAKE FURTHER NOTICE that if the Selling Debtors (or the Wind Down Entity (as defined in the Motion)) receive one or more Qualified Bids (in addition to the Stalking Horse Purchase Agreement) that satisfy the requirements and timeframe specified by the Bidding Procedures, the Selling Debtors (or the Wind Down Entity) will conduct the Auction to determine the highest and best bid for the purchased assets on [_____] at [_____] (prevailing Eastern Time) at the offices of Akin Gump Strauss Hauer & Feld LLP, co-counsel to the Debtors, at 1111 Louisiana Street, 44th Floor, Houston, Texas, 77002, or at such other location as the Selling Debtors (or the Wind Down Entity) may hereafter designate (with notice of such alternate location given to all qualified bidders under the Bidding Procedures). If no other Qualified Bid is received by the Bid Deadline (other than the Stalking Horse Bid), then the Auction shall not be held, and the Selling Debtors (or the Wind Down Entity) shall promptly seek the Court's approval of the sale of the Assets to the Stalking Horse Bidder in accordance with the terms of the Stalking Horse Purchase Agreement.

PLEASE TAKE FURTHER NOTICE that only the Selling Debtors (or the Wind Down Entity), the Stalking Horse Bidder, and any other Qualified Bidders that have timely submitted a Qualified Bid, their respective representatives, and the United States Trustee shall be permitted to attend the Auction.

PLEASE TAKE FURTHER NOTICE that the Selling Debtors (or the Wind Down Entity) will seek approval of the Sale before the Honorable Kevin J. Carey, United States Bankruptcy Judge for the District of Delaware, at 824 North Market Street, 5th Floor, Wilmington, Delaware 19801, on [_____], 2016 at [_____] (prevailing Eastern Time).

PLEASE TAKE FURTHER NOTICE that objections to the Motion, if any, *must*: (i) be in writing; (ii) conform to the applicable provisions of the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure, and the Local Rules for the United States Bankruptcy Court for the District of Delaware; (iii) state with particularity the legal and factual basis for the objection and

the specific grounds therefor; and (iv) be filed with the Court and served so as to be *actually received* no later than [_____], 2016 at [_____] (prevailing Eastern Time) by the following parties:

| Selling Debtors (or the Wind Down Entity) | Co-Counsel to Debtors |
|---|---|
| Hercules Offshore, Inc.<br>9 Greenway Plaza, Suite 2200<br>Houston, Texas 77046<br>Attn: Troy L. Carson and Beau Thompson | Akin Gump Strauss Hauer & Feld LLP<br>One Bryant Park<br>New York, New York 10036<br>Attn: Michael S. Stamer and Philip C. Dublin<br><br>- and -<br><br>Morris, Nichols, Arsht & Tunnell LLP<br>1201 N. Market St., 16th Flr.<br>Wilmington, Delaware 19899<br>Attn: Eric D. Schwartz and Matthew B. Harvey |
| **United States Trustee** | **Counsel to the Stalking Horse Bidder** |
| Office of the United States Trustee<br>for the District of Delaware<br>844 King Street<br>Suite 2207, Lockbox 35<br>Wilmington, Delaware 19801<br>Attn: David L. Buchbinder and Timothy J. Fox, Jr. | Locke Lord LLP<br>600 Travis Street, Suite 2800<br>Houston, Texas 77002<br>Attn: Philip Eisenberg and Steve Peterson<br><br>Thompson & Knight, LLP<br>333 Clay Street, Suite 3300<br>Houston, TX 77002<br>Attn: Mitchell Ayer and Steve Levitt |
| **Counsel to the Ad Hoc Group** | **Counsel to the Agent** |
| Kirkland & Ellis LLP<br>601 Lexington Avenue<br>New York, New York 10022<br>Attn: Brian Lennon and Robert Britton)<br><br>-and-<br><br>White & Case LLP<br>1155 Avenue of the Americas<br>New York, New York 10036<br>Attn: Glenn M. Kurtz, Esq.<br><br>Southeast Financial Center, Suite 4900<br>200 South Biscayne Boulevard<br>Miami, Florida 33131<br>Attn: Michael C. Shepherd and Joseph A. Pack)<br><br>-and-<br><br>Klehr Harrison Harvey Branzburg LLP<br>919 N. Market Street, Suite 100<br>Wilmington, Delaware 19801<br>Attn: Domenic E. Pacitti and Michael Yurkewicz | King & Spalding LLP<br>1185 Avenue of the Americas<br>New York, New York 10036<br>Attn: Michael C. Rupe |

Dated: [            ], 2016
       Wilmington, Delaware

**MORRIS, NICHOLS, ARSHT & TUNNELL LLP**

*/s/ DRAFT*
Robert J. Dehney (No. 3578)
Eric D. Schwartz (No. 3134)
Matthew B. Harvey (No. 5186)
1201 N. Market St., 16th Flr.
PO Box 1347
Wilmington, DE  19899-1347
Telephone: (302) 658-9200
Facsimile: (302) 658-3989
rdehney@mnat.com
eschwartz@mnat.com
mharvey@mnat.com

- and –

**AKIN GUMP STRAUSS HAUER & FELD LLP**
Michael S. Stamer (admitted *pro hac vice*)
Philip C. Dublin (admitted *pro hac vice*)
One Bryant Park
New York, New York 10036
Telephone: (212) 872-1000
Facsimile: (212) 872-1002

- and –

Kevin M. Eide (admitted *pro hac vice*)
1333 New Hampshire Avenue, N.W.
Washington, D.C. 20036
Telephone: (202) 887-4000
Facsimile: (202) 887-4288

*Counsel to Debtors and Debtors in Possession*

4

## CONSEQUENCES OF FAILING TO TIMELY FILE AND SERVE AN OBJECTION

**ANY PARTY OR ENTITY WHO FAILS TO TIMELY FILE AND SERVE AN OBJECTION TO THE SALE ON OR BEFORE THE OBJECTION DEADLINE IN ACCORDANCE WITH THE BIDDING PROCEDURES ORDER SHALL BE FOREVER BARRED FROM ASSERTING ANY OBJECTION TO THE SALE, INCLUDING WITH RESPECT TO THE TRANSFER OF THE PROPERTY FREE AND CLEAR OF LIENS, CLAIMS, ENCUMBRANCES AND OTHER INTERESTS AFFECTED THEREUNDER.**

### NO SUCCESSOR OR TRANSFEREE LIABILITY

The proposed Sale Order provides that the purchaser in the Sale (the "**Purchaser**") will have no responsibility for, and the assets will be sold free and clear of, any successor liability, including the following:

To the greatest extent allowable by applicable law, the Purchaser shall not be deemed, as a result of any action taken in connection with the Stalking Horse Purchase Agreement, the consummation of the Sale (as defined in the proposed Sale Order) contemplated by the Stalking Horse Purchase Agreement, or the transfer or operation of the Assets, to (a) be a legal successor, or otherwise be deemed a successor to the Debtors (or the Wind Down Entity) (other than, for the Purchaser, with respect to any obligations as an assignee under the Assigned Contracts and Assigned Leases arising after the Closing); (b) have, *de facto* or otherwise, merged with or into the Debtors (or the Wind Down Entity); or (c) be an alter ego or mere continuation or substantial continuation of the Debtors (or the Wind Down Entity), including, without limitation, within the meaning of any foreign, federal, state or local revenue law, pension law, the Employee Retirement Income Security Act, the Consolidated Omnibus Budget Reconciliation Act, the WARN Act (29 U.S.C. §§ 2101, et seq.), the Comprehensive Environmental Response Compensation and Liability Act ("**CERCLA**"), the Fair Labor Standard Act, Title VII of the Civil Rights Act of 1964 (as amended), the Age Discrimination and Employment Act of 1967 (as amended), the Federal Rehabilitation Act of 1973 (as amended), the National Labor Relations Act (29 U.S.C. § 151, et seq.), the Americans with Disabilities Act of 1990 (42 U.S.C. § 12101), environmental liabilities, debts, claims or obligations arising from conditions first existing on or prior to the Closing (including, without limitation, the presence of hazardous, toxic, polluting, or contaminating substances or wastes), which may be asserted on any basis, including, without limitation, under CERCLA, any liabilities, debts or obligations of or required to be paid by the Debtors (or the Wind Down Entity) for any taxes of any kind for any period, labor, employment, or other law, rule or regulation (including without limitation filing requirements under any such laws, rules or regulations), or under any products liability law or doctrine with respect to the Debtors' (or the Wind Down Entity's) liability under such law, rule or regulation or doctrine. All rights of any party to set off any claims, debts or obligations owed by or to the Purchaser in connection with the Assets shall be extinguished on the Closing Date pursuant to the proposed Sale Order, with such rights attaching to the proceeds of the Sale. Other than as expressly set forth in the Stalking Horse Purchase Agreement, the Purchaser shall not have any responsibility for (a) any liability or other obligation of the Debtors (or the Wind Down Entity) or related to the Assets or (b) any claims (as such term is defined in section 101(5) of the Bankruptcy Code) against the Debtors (or the Wind Down Entity) or any of their predecessors or affiliates. To the greatest extent allowed by applicable law, the Purchaser shall have no liability whatsoever with respect to the Debtors' (or the Wind Down Entity's) (or their predecessors' or affiliates') respective businesses or operations or any of the Debtors' (or the Wind Down Entity's) (or their predecessors' or affiliates') obligations based, in whole or in part, directly or indirectly, on any theory of successor or vicarious liability of any kind or character, or based upon any theory of antitrust, environmental, successor or transferee liability, *de facto* merger or substantial continuity, labor and employment or products liability, whether known or unknown as of the Closing, now existing or hereafter arising, asserted or unasserted, fixed or contingent, liquidated or unliquidated, including liabilities on account of any taxes arising, accruing or payable under, out of, in connection with, or in any way relating to the operation of the Assets prior to the Closing.

**IF YOU HAVE ANY QUESTIONS REGARDING THIS SALE NOTICE, PLEASE CONTACT THE CLAIMS AND NOTICING AGENT AT 855-628-7532**

## **SCHEDULE 3**

NOTICE OF POTENTIAL ASSUMPTION AND ASSIGNMENT

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| HERCULES OFFSHORE, INC., *et al.* | ) | Case No. 16-11385 (KJC) |
| | ) | |
| | ) | (Jointly Administered) |
| Debtors.[1] | ) | |
| | ) | **Sale Hearing Date: [_____], 2016 at [_____] (ET)** |
| | ) | **Objection Deadline [_____], 2016 at [_____] (ET)** |
| | ) | |
| | ) | |

**NOTICE OF (I) CURE AMOUNT WITH RESPECT TO**
**EXECUTORY CONTRACTS AND UNEXPIRED LEASES TO**
**BE ASSUMED AND ASSIGNED AND (II) POTENTIAL ASSUMPTION**
<u>**AND ASSIGNMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES**</u>

**PLEASE TAKE NOTICE OF THE FOLLOWING**:

1.      Pursuant to the *Order (I) Authorizing Selling Debtors' Entry Into the Stalking Horse Purchase Agreement for the Sale of the Selling Debtors' GOM Fleet and Related Assets; (II) Approving Bidding Procedures and Bid Protections; (III) Scheduling a Hearing to Consider Approval of the Sale of Assets; (IV) Approving Form and Manner of Notice of Sale; and (V) Granting Related Relief* [Docket No. __] (the "<u>Bidding Procedures Order</u>")[2] entered by the United States Bankruptcy Court for the District of Delaware (the "<u>Court</u>") on [_____], 2016, the

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Cliffs Drilling Company (8934); Cliffs Drilling Trinidad L.L.C. (5205); FDT LLC (7581); FDT Holdings LLC (4277); Hercules Drilling Company, LLC (2771); Hercules Offshore, Inc. (2838); Hercules Offshore Services LLC (1670); Hercules Offshore Liftboat Company LLC (5303); HERO Holdings, Inc. (5475); SD Drilling LLC (8190); THE Offshore Drilling Company (4465); THE Onshore Drilling Company (1072); TODCO Americas Inc. (0289); and TODCO International Inc. (0326). The Debtors' corporate headquarters are located at, and the mailing address for each Debtor is, 9 Greenway Plaza, Suite 2200, Houston, TX 77046.

[2] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Bidding Procedures approved as part of the Bidding Procedures Order.

Selling Debtors[3] hereby provide notice (this "Notice") that they are a party to various executory contracts and unexpired leases set forth on Exhibit 1 attached hereto (each an "Executory Contract or Unexpired Lease" and, collectively, the "Executory Contracts and Unexpired Leases") and that they intend to seek to assume and assign some or all of such Executory Contracts and Unexpired Leases (each a "Potentially Assigned Contract or Lease" and, collectively, the "Potentially Assigned Contracts and Leases") to the Successful Bidder in connection with the proposed sale of the Selling Debtors' GOM Fleet and related assets.

2.      You have been identified as a party to a Potentially Assigned Contract or Lease. The Potentially Assigned Contract or Lease to which you have been identified as a non-Debtor counterparty is set forth on Exhibit 1 attached hereto.  If this Executory Contract or Unexpired Lease is *actually* to be assumed and assigned to the Successful Bidder, a separate notice of such assumption and assignment will be provided to you.

3.      Also set forth on Exhibit 1 is the amount that the Selling Debtors' records reflect is owing to cure any and all defaults under the Potentially Assigned Contract or Lease to which you are a party (the "Cure Amount") so as to permit the assumption and assignment of such Potentially Assigned Contract or Lease (if ultimately designated for assumption and assignment by the Successful Bidder) pursuant to 11 U.S.C. § 365.  As of the date hereof, the Selling Debtors' records reflect that all postpetition amounts owing under the Potentially Assigned Contract or Lease to which you are a party have been paid and will continue to be paid and that there are no other defaults under the Potentially Assigned Contract or Lease.  Amounts due and owing under

---

[3] The Selling Debtors are comprised of the following Debtor entities: (i) Hercules Offshore Services LLC; (ii) Hercules Drilling Company LL; (iii) TODCO Americas Inc.; (iv) Cliffs Drilling Company; (v) THE Offshore Drilling Company; and (vi) SD Drilling LLC.

the Potentially Assigned Contracts and Leases with respect to the period after the Petition Date
are not included in the calculation of the Cure Amounts.

4.    Objections, if any, to the Proposed Cure Amount, or to the possible assumption,
assignment and/or transfer of any Potentially Assigned Contract or Lease to the Successful
Bidder, as applicable ("Cure/Assignment Objections"), must be filed with the United States
Bankruptcy Court for the District of Delaware, 824 North Market Street, 5th Floor, Wilmington
Delaware 19801, and served so as to be *actually received* on or before [_____], 2016 at [_____]
(the "Cure/Assignment Objection Deadline").  Service should be made by mail to:

| The Selling Debtors (or the Wind Down Entity) | Co-Counsel to Debtors |
|---|---|
| Hercules Offshore, Inc.<br>9 Greenway Plaza, Suite 2200<br>Houston, Texas 77046<br>Attn: Troy L. Carson and Beau Thompson | Akin Gump Strauss Hauer & Feld LLP<br>One Bryant Park<br>New York, New York 10036<br>Attn: Michael S. Stamer and Philip C. Dublin<br><br>- and -<br><br>Morris, Nichols, Arsht & Tunnell LLP<br>1201 N. Market St., 16th Flr.<br>Wilmington, Delaware 19899<br>Attn: Eric D. Schwartz and Matthew B. Harvey |
| **United States Trustee** | **Counsel to the Stalking Horse Bidder** |
| Office of the United States Trustee<br>for the District of Delaware<br>844 King Street<br>Suite 2207, Lockbox 35<br>Wilmington, Delaware 19801<br>Attn: David L. Buchbinder and Timothy J. Fox, Jr. | Locke Lord LLP<br>600 Travis Street, Suite 2800<br>Houston, Texas 77002<br>Attn: Philip Eisenberg and Steve Peterson<br><br>Thompson & Knight, LLP<br>333 Clay Street, Suite 3300<br>Houston, TX 77002<br>Attn: Mitchell Ayer and Steve Levitt |
| **Counsel to the Ad Hoc Group** | **Counsel to the Agent** |
| Kirkland & Ellis LLP<br>601 Lexington Avenue<br>New York, New York 10022<br>Attn: Brian Lennon and Robert Britton)<br><br>-and-<br><br>White & Case LLP<br>1155 Avenue of the Americas<br>New York, New York 10036<br>Attn: Glenn M. Kurtz, Esq.<br><br>Southeast Financial Center, Suite 4900<br>200 South Biscayne Boulevard<br>Miami, Florida 33131<br>Attn: Michael C. Shepherd and Joseph A. Pack) | King & Spalding LLP<br>1185 Avenue of the Americas<br>New York, New York 10036<br>Attn: Michael C. Rupe |

| | |
|---|---|
| -and-<br><br>Klehr Harrison Harvey Branzburg LLP<br>919 N. Market Street, Suite 100<br>Wilmington, Delaware 19801<br>Attn: Domenic E. Pacitti and Michael Yurkewicz | |

5.      Any Cure/Assignment Objection must (i) be in writing; (ii) conform to the applicable provisions of the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure, and the Local Rules for the United States Bankruptcy Court for the District of Delaware; (iii) state with particularity the legal and factual basis for the objection and the specific grounds therefor; and (iv) if challenging a Cure Amount, set forth the prepetition cure amount being claimed by the objecting party with appropriate documentation in support thereof.

6.      Cure/Assignment Objections that are timely filed and cannot be resolved by the Selling Debtors (or the Wind Down Entity) and the counterparty to the Potentially Assigned Contract or Lease will be heard at a hearing to be held before the Honorable Kevin J. Carey, United States Bankruptcy Judge for the District of Delaware, 824 North Market Street, 5th Floor, Wilmington, Delaware 19801, on [_____] at [_____] (prevailing Eastern Time) unless the Selling Debtors (or the  Wind Down Entity) and the Successful Bidder agree otherwise or the Court orders otherwise.

7.      Unless a non-Debtor counterparty to any Potentially Assigned Contract or Lease files a Cure/Assignment Objection by the Cure/Assignment Objection Deadline, such counterparty shall be (i) forever barred from objecting to the Cure Amount and from asserting against the

Selling Debtors (or the Wind Down Entity) or the Stalking Horse Bidder (or any other Successful Bidder) any additional cure or other amounts with respect to such Executory Contract or Unexpired Lease in the event that such Executory Contract or Unexpired Lease is ultimately assumed and/or assigned by the Selling Debtors, and the Selling Debtors and the Stalking Horse Bidder (or any other Successful Bidder) shall be entitled to rely solely upon the Cure Amount, and (ii) deemed to have consented to the assumption, assignment and/or transfer of such Executory Contract or Unexpired Lease (including the transfer of any rights and benefits thereunder) to the Stalking Horse Bidder, any other Successful Bidder or any other assignee of the relevant Executory Contract or Unexpired Lease, and shall be forever barred and estopped from asserting or claiming against the Selling Debtors (or the Wind Down Entity), the Stalking Horse Bidder, any other Successful Bidder, or any other assignee of the relevant Executory Contract or Unexpired Lease that any additional amounts are due or defaults exist, or conditions to assumption, assignment and/or transfer must be satisfied under such Executory Contract or Unexpired Lease, or that any right or benefit under such Executory Contract or Unexpired Lease cannot or will not be available to the Stalking Horse Bidder, any other Successful Bidder, or any other assignee of the relevant Executory Contract or Unexpired Lease.

8.      At the Sale Hearing, the Selling Debtors (or the Wind Down Entity) shall present evidence necessary to demonstrate adequate assurance of future performance by the Successful Bidder.

9.      The presence of a contract, lease or other agreement on Exhibit 1 attached hereto does not constitute an admission that such contract, lease or other agreement is an Executory Contract or Unexpired Lease or that such contract, lease or other agreement will be assumed by the Selling Debtors and assigned to any Successful Bidder.  The Selling Debtors (and the Wind

Down Entity) reserve all of their rights, claims and causes of action with respect to the contracts, leases and other agreements listed on Exhibit 1.

10.     All documents filed with the Bankruptcy Court in connection with these chapter 11 cases, including orders of the Bankruptcy Court, are available for free on the website of the Court-appointed claims and noticing agent in these cases, Prime Clerk LLC, at https://cases.primeclerk.com/herculesinfo/, or can be requested by e-mail at herculesinfo@PrimeClerk.com.

Dated:  [              ], 2016
        Wilmington, Delaware

**MORRIS, NICHOLS, ARSHT & TUNNELL LLP**

*/s/ DRAFT*
Robert J. Dehney (No. 3578)
Eric D. Schwartz (No. 3134)
Matthew B. Harvey (No. 5186)
1201 N. Market St., 16th Flr.
PO Box 1347
Wilmington, DE  19899-1347
Telephone: (302) 658-9200
Facsimile: (302) 658-3989
rdehney@mnat.com
eschwartz@mnat.com
mharvey@mnat.com

- and –

**AKIN GUMP STRAUSS HAUER & FELD LLP**
Michael S. Stamer (admitted *pro hac vice*)
Philip C. Dublin (admitted *pro hac vice*)
One Bryant Park
New York, New York 10036
Telephone: (212) 872-1000
Facsimile: (212) 872-1002

- and –

Kevin M. Eide (admitted *pro hac vice*)
1333 New Hampshire Avenue, N.W.
Washington, D.C. 20036
Telephone: (202) 887-4000
Facsimile: (202) 887-4288

*Counsel to Debtors and Debtors in Possession*

**Exhibit 1**

Potentially Assigned Contracts and Leases

# **SCHEDULE 4**

ASSIGNMENT NOTICE

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| HERCULES OFFSHORE, INC., *et al.* | ) Case No. 16-11385 (KJC) |
| | ) |
| Debtors.[1] | ) (Jointly Administered) |
| | ) **Sale Hearing Date: [____], 2016 at [____] (ET)** |
| | ) **Objection Deadline [____], 2016 at [____] (ET)** |
| | ) |
| | ) |

**NOTICE OF ASSUMPTION AND ASSIGNMENT**
**OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES**

**PLEASE TAKE NOTICE OF THE FOLLOWING**:

1.       On [____], 2016, the United States Bankruptcy Court for the District of Delaware (the "Court") entered the *Order (I) Authorizing Selling Debtors' Entry Into the Stalking Horse Purchase Agreement for the Sale of the Selling Debtors' GOM Fleet and Related Assets; (II) Approving Bidding Procedures and Bid Protections; (III) Scheduling a Hearing to Consider Approval of the Sale of Assets; (IV) Approving Form and Manner of Notice of Sale; and (V) Granting Related Relief* [Docket No. __] (the "Bidding Procedures Order").[2]

2.       On [____], 2015, the Court entered the *Order (A) Approving the Sale of the Selling Debtors' Assets Free and Clear of Liens, Claims, Interests, and Encumbrances, (B)*

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Cliffs Drilling Company (8934); Cliffs Drilling Trinidad L.L.C. (5205); FDT LLC (7581); FDT Holdings LLC (4277); Hercules Drilling Company, LLC (2771); Hercules Offshore, Inc. (2838); Hercules Offshore Services LLC (1670); Hercules Offshore Liftboat Company LLC (5303); HERO Holdings, Inc. (5475); SD Drilling LLC (8190); THE Offshore Drilling Company (4465); THE Onshore Drilling Company (1072); TODCO Americas Inc. (0289); and TODCO International Inc. (0326).  The Debtors' corporate headquarters are located at, and the mailing address for each Debtor is, 9 Greenway Plaza, Suite 2200, Houston, TX 77046.

[2] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Bidding Procedures approved as part of the Bidding Procedures Order.

*Authorizing the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, and (C) Granting Certain Related Relief* [Docket No. __] (the "Sale Order").

3.    Pursuant to the Sale Order, the Selling Debtors[3] have accepted the bid of [____] (the "Successful Bidder") for the purchase (the "Sale") of the Selling Debtors' GOM Fleet and related assets (the "Assets").   The terms of the successful bid are set forth in that certain asset purchase agreement, dated as of [____], 2016, among the Selling Debtors and the Successful Bidder.

4.    The Bidding Procedures Order, among other things, authorized procedures for the Selling Debtors to assume and assign certain executory contracts and unexpired leases (each an "Assigned Contract or Assigned Lease" and, collectively, the "Assigned Contracts and Assigned Leases") to the Successful Bidder.   Attached hereto as Exhibit 1 is a list of the Assigned Contracts and Assigned Leases that the Selling Debtors will assign to the Successful Bidder in connection with the closing of the Sale and the cure amount, if any, with respect to each Assigned Contract or Assigned Lease.

5.    All documents filed with the Bankruptcy Court in connection with these chapter 11 cases, including orders of the Bankruptcy Court, are available for free on the website of the Court-appointed claims and noticing agent in these cases, Prime Clerk LLC, at https://cases.primeclerk.com/herculesinfo/, or can be requested by e-mail at herculesinfo@PrimeClerk.com.

---

[3] The Selling Debtors are comprised of the following Debtor entities: (i) Hercules Offshore Services LLC; (ii) Hercules Drilling Company LL; (iii) TODCO Americas Inc.; (iv) Cliffs Drilling Company; (v) THE Offshore Drilling Company; and (vi) SD Drilling LLC.

Dated:    [         ], 2016
         Wilmington, Delaware

**MORRIS, NICHOLS, ARSHT & TUNNELL LLP**

*/s/ DRAFT*
Robert J. Dehney (No. 3578)
Eric D. Schwartz (No. 3134)
Matthew B. Harvey (No. 5186)
1201 N. Market St., 16th Flr.
PO Box 1347
Wilmington, DE  19899-1347
Telephone: (302) 658-9200
Facsimile: (302) 658-3989
rdehney@mnat.com
eschwartz@mnat.com
mharvey@mnat.com

- and –

**AKIN GUMP STRAUSS HAUER & FELD LLP**
Michael S. Stamer (admitted *pro hac vice*)
Philip C. Dublin (admitted *pro hac vice*)
One Bryant Park
New York, New York 10036
Telephone: (212) 872-1000
Facsimile: (212) 872-1002

- and –

Kevin M. Eide (admitted *pro hac vice*)
1333 New Hampshire Avenue, N.W.
Washington, D.C. 20036
Telephone: (202) 887-4000
Facsimile: (202) 887-4288

*Counsel to Debtors and Debtors in Possession*

**<u>Exhibit 1</u>**

Assigned Contracts and Assigned Leases

| Summary report:<br>**Litéra® Change-Pro TDC 7.5.0.195 Document comparison done on<br>12/13/2016 9:35:39 AM** | |
|---|---|
| **Style name:** Default Style | |
| **Intelligent Table Comparison:** Active | |
| **Original DMS:** iw://EASTDMS/EAST/112472011/1 | |
| **Description:** Hercules - Revised Bidding Procedures Order | |
| **Modified DMS:** iw://EASTDMS/EAST/112472011/2 | |
| **Description:** Hercules - Revised Bidding Procedures Order | |
| **Changes:** | |
| Add | 6 |
| Delete | 4 |
| Move From | 0 |
| Move To | 0 |
| Table Insert | 0 |
| Table Delete | 0 |
| Table moves to | 0 |
| Table moves from | 0 |
| Embedded Graphics (Visio, ChemDraw, Images etc.) | 0 |
| Embedded Excel | 0 |
| Format changes | 0 |
| **Total Changes:** | 10 |