## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| HERCULES OFFSHORE, INC., *et al.* | ) Case No. 16-11385 (KJC) |
| | ) |
| | ) (Jointly Administered) |
| Debtors.[1] | ) |
| | ) **Re: Docket No. 534, 557, 560** |

**ORDER (A) APPROVING THE SALE OF THE SELLING DEBTORS' GOM FLEET AND RELATED ASSETS FREE AND CLEAR OF LIENS, CLAIMS, INTERESTS AND ENCUMBRANCES, (B) AUTHORIZING THE ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES, AND (C) GRANTING RELATED RELIEF**

Upon the motion, dated November 30, 2016 [Docket No. 534] (the "Motion"),[2] of the above-captioned debtors and debtors in possession (collectively, the "Debtors") pursuant to sections 105(a), 363, 365, 503 and 507 of title 11 of the United States Code (the "Bankruptcy Code"), as supplemented by Rules 2002, 6004, 6006, 9007, and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and Rules 2002-1 and 6004-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), for the entry of orders approving, among other things:

    I.   entry of an order (the "Bidding Procedures Order"):

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Cliffs Drilling Company (8934); Cliffs Drilling Trinidad L.L.C. (5205); FDT LLC (7581); FDT Holdings LLC (4277); Hercules Drilling Company, LLC (2771); Hercules Offshore, Inc. (2838); Hercules Offshore Services LLC (1670); Hercules Offshore Liftboat Company LLC (5303); HERO Holdings, Inc. (5475); SD Drilling LLC (8190); THE Offshore Drilling Company (4465); THE Onshore Drilling Company (1072); TODCO Americas Inc. (0289); and TODCO International Inc. (0326). The HERO Liquidating Trust's corporate headquarters are located at, and the mailing address for the HERO Liquidating Trust is, 9 Greenway Plaza, Suite 2200, Houston, TX 77046.

[2] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Motion, or, if not defined in the Motion, shall have the meanings ascribed to them in the Purchase and Sale Agreement (as defined herein).

    a.  approving sale procedures (the "Bidding Procedures") in connection with the sale (the "Sale") of all of the right, title and interest in the Selling Debtors'[3] GOM Fleet and related Equipment, Rig Documents and Purchase Agreements (collectively with the GOM Fleet, the "Assets");

    b.  approving the payment of a Break-Up Fee and an Expense Reimbursement;

    c.  scheduling a hearing (the "Sale Hearing") to consider approval of the Sale;

    d.  scheduling a deadline for bidding on the Assets and scheduling an auction (the "Auction") for the Assets;

    e.  establishing certain procedures for the sale, assumption and assignment of certain executory contracts and unexpired leases, including notice (the "Notice of Potential Assumption and Assignment") of proposed cure amounts (the "Proposed Cure Payments");

    f.  approving a form of notice of the Notice of Auction and Sale Hearing (as defined in the Bidding Procedures Order) and the requirements for publication thereof (as published, the "Publication Notice");

II.  entry of this order (this "Order"):

    a.  approving the Sale of the Assets, free and clear of all liens, claims (including, without limitation, as defined in section 101(5) of the Bankruptcy Code), rights or claims based on any successor or transferee liability, interests, encumbrances, rights, remedies, restrictions, liabilities and contractual commitments of any kind or nature whatsoever, whenever arising, whether at law or in equity; and

    b.  granting certain related relief;

and the Court having entered the Bidding Procedures Order [Docket No. 557] on December 13, 2016, which, among other things, approved the Bidding Procedures; and the Auction having been held on January 12, 2017 in accordance with the Bidding Procedures Order; and at the conclusion of the Auction, Enterprise Offshore Drilling LLC having been chosen as the Successful Bidder (the "Successful Bidder" or the "Purchaser"); and the Selling Debtors and the Wind Down Entity having agreed to enter into and consummate the Purchase and Sale

---

[3] The Selling Debtors are comprised of the following Debtor entities: (i) Hercules Offshore Services LLC; (ii) Hercules Drilling Company LL; (iii) TODCO Americas Inc.; (iv) Cliffs Drilling Company; (v) THE Offshore Drilling Company; and (vi) SD Drilling LLC.

Agreement, as amended by the first amendment thereto, attached hereto as Exhibit A with the Purchaser (as amended, the "Purchase and Sale Agreement"); and the Sale Hearing having been held on January 18, 2017 in accordance with the Bidding Procedures Order; and upon the record of the Bidding Procedures Hearing and the Sale Hearing, and all of the proceedings before this Court; and this Court having reviewed the Motion and any objections thereto and having found and determined that the relief sought in the Motion, and entry of this Order, is in the best interests of the Debtors, the Debtors' estates, their creditors, and other parties in interest; and after due deliberation thereon and sufficient cause appearing therefore, it is hereby:

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

**IT IS HEREBY DETERMINED, FOUND, ADJUDGED, DECREED, AND ORDERED THAT:**

**A.    Findings and Conclusions:**  The findings and conclusions set forth herein and in the record of the Sale Hearing constitute the Court's findings of fact and conclusions of law under Rule 52 of the Federal Rules of Civil Procedure, as made applicable herein by Bankruptcy Rules 7052 and 9014.  To the extent any of the following conclusions of law constitute findings of fact, or vice versa, they are adopted as such.

**B.    Jurisdiction, Venue and Core Proceeding:**  This Court has jurisdiction over these Chapter 11 Cases pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated as of February 29, 2012.  The matters covered by this order are core proceedings under 28 U.S.C. § 157(b)(2).  Venue is proper in this district and before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.  Venue in this district and before this Court was proper as of the Petition Date and continues to be proper.

**C.    Statutory Predicates.**  The statutory predicates for the relief sought in the Motion are 105, 363, 365, 503 and 507 of the Bankruptcy Code, Rules 2002, 6004, 6006, 9008 and 9014 of the Bankruptcy Rules and Rules 2002-1 and 6004-1 of the Local Rules.  The consummation of the transactions contemplated by the Motion, the Purchase and Sale Agreement and this Order is legal, valid and properly authorized under all such provisions of the Bankruptcy Code, the Bankruptcy Rules and the Local Rules, and all of the applicable requirements of such sections and rules have been complied with in respect of such transactions.

**D.    Notice.**  As evidenced by the affidavits of service and publication filed with the Court, proper, timely, adequate, and sufficient notice of the Motion, the Bidding Procedures, the Bidding Procedures Hearing, the Bidding Procedures Order, the Sale Hearing, the procedures for assumption and assignment of Assumed Contracts (as defined in paragraph V below), the Proposed Cure Payments, the Sale and all transactions contemplated therein or in connection therewith, and all deadlines related thereto, was given under the particular circumstances and no further notice need be provided.  A reasonable opportunity to object or be heard regarding the relief granted by this Order has been afforded to those parties entitled to notice pursuant to the Bankruptcy Code, the Bankruptcy Rules and the Local Rules.

**E.**    Actual written notice of the Motion, the Bidding Procedures, the Bidding Procedures Hearing, the Auction, the Sale Hearing, the procedures for assumption and assignment of contracts and leases, the Proposed Cure Payments, the Sale and all transactions contemplated therein or in connection therewith, and all deadlines related thereto has been given to all interested persons and entities, including, without limitation: (a) counsel to the ad hoc group of First Lien Lenders (the "Ad Hoc Group"); (b) counsel to the Agent; (c) all entities that assert any lien, claim or interest in the Assets; (d) all parties to the Executory Contracts and

4

Unexpired Leases; (e) all governmental taxing authorities that have or as a result of the sale of the Assets may have claims, contingent or otherwise, against the Debtors; (f) all state and local taxing authorities having jurisdiction over any of the Assets, including the Internal Revenue Service; (g) the Environmental Protection Agency; (h) all parties that filed requests for notices under Bankruptcy Rule 9010(b) or were entitled to notice under Bankruptcy Rule 2002; (i) all interested governmental, pension, environmental and other regulatory entities; (j) the office of the attorneys general for the states in which the Debtors operate; (k) the Office of the United States Trustee for the District of Delaware; (l) the United States Department of Justice; (m) all entities that within the twelve months prior to the Petition Date expressed to the Debtors an interest in purchasing all or a substantial portion of the Assets; (n) counsel to the Stalking Horse Bidder and all other notice parties requested by the Stalking Horse Bidder; and (o) all parties required to be provided notice pursuant to the Bidding Procedures Order.  Other parties interested in bidding on the Assets were provided, upon request, sufficient information to make an informed judgment on whether to bid on the Assets.  The foregoing constitutes proper, timely, adequate, and sufficient notice under the particular circumstances of these cases, and no further notice need be provided.

F.    The Notice of Auction and Sale Hearing was published in *The Wall Street Journal (National Edition)* and the *Houston Chronicle* on December 16, 2016.  Such publication notice was compliant with the Bidding Procedures Order, and was sufficient and proper notice to any other interested parties, including those whose identities are unknown to the Debtors.

G.    **Extensive Efforts by Debtors.**  As of the Petition Date and for a period of several months before the commencement of these Chapter 11 Cases, the Debtors worked with their counsel and financial advisors to implement a viable transaction that would allow them to

maximize the value of the Assets. The transaction that is the subject of this Order is the result of the Debtors' extensive efforts in seeking to maximize recoveries to the Selling Debtors' estates, for the benefit of the Debtors' stakeholders.

**H.    Business    Justification.**    The Debtors have demonstrated compelling circumstances and a good, sufficient, and sound business purpose and justification for the Sale of the Assets.

**I.    Bidding Procedures Order.**  On December 13, 2016, this Court entered the Bidding Procedures Order approving Bidding Procedures for the Assets.    The Bidding Procedures provided a full, fair and reasonable opportunity for any entity to make an offer to purchase the Assets.

**J.    Adequate Marketing; Highest or Best Offer.**  As demonstrated by (i) the testimony and other evidence proffered or adduced at the Sale Hearing, and (ii) the representations of counsel made on the record at the Bidding Procedures Hearing and the Sale Hearing, (a) the Debtors have adequately marketed the Assets and conducted the sale process in compliance with the Bidding Procedures Order; (b) a reasonable opportunity has been given to any interested party to make the highest and best offer for the Assets; (c) the consideration provided by the Purchaser in the Purchase and Sale Agreement constitutes the highest or otherwise best offer for the Assets; (d) the consideration provides fair and reasonable consideration for the Assets and constitutes reasonably equivalent value under the Bankruptcy Code and under the laws of the United States, any state, territory, possession, or the District of Columbia; (e) the Sale will provide a greater recovery for the Debtors' creditors with respect to the Assets than would be provided by any other practically available alternative; (f) taking into consideration all relevant factors and circumstances, no other entity has offered to purchase the

Assets for greater economic value to the Debtors or their estates; and (g) the Debtors' determination that the Purchase and Sale Agreement constitutes the highest or best offer for the Assets constitutes a valid and sound exercise of the Debtors' business judgment.

      **K.**   **Opportunity to Object.**  A reasonable opportunity to object or be heard with respect to the Motion, and all relief requested therein has been afforded to all interested parties.

      **L.**   **Property of the Estate.**  The Assets are property of the Debtors' estates and title thereto is vested in the Debtors' estates or the Wind Down Entity, as the case may be.

      **M.**   **Sale in Best Interests.**  The actions represented to be taken by the Debtors (or the Wind Down Entity) and the Purchaser are appropriate under the circumstances of these chapter 11 cases and are in the best interests of the Debtors, their estates and creditors, and other parties in interest. Approval of the Purchase and Sale Agreement and of the Sale and all related transactions at this time is in the best interests of the Debtors, their creditors, their estates, and all other parties in interest.

      **N.**   **Arm's-Length Sale.**  The Purchase and Sale Agreement, the Sale and the transactions contemplated therein and associated therewith were negotiated, proposed, and entered into by the Selling Debtors, the Wind Down Entity and the Purchaser without collusion, in good faith, and from arm's-length bargaining positions. Neither the Debtors (or the Wind Down Entity), their insiders and affiliates, nor the Purchaser have engaged in any conduct that would cause or permit the Purchase and Sale Agreement, the Sale, or any part of the transactions thereby to be avoided under section 363(n) of the Bankruptcy Code.

      **O.**   **Good Faith Purchaser.**  The Purchaser is a good faith purchaser under section 363(m) of the Bankruptcy Code and, as such, is entitled to all of the protections afforded thereby.

**P.      Corporate Authority.**  Each Selling Debtor (or the Wind Down Entity) (i) has full corporate power and authority to execute the Purchase and Sale Agreement and all other documents contemplated thereby, and the Sale of the Assets has been duly and validly authorized by all necessary corporate action of each of the Selling Debtors (or the Wind Down Entity), (ii) has all of the corporate power and authority necessary to consummate the transactions contemplated by the Purchase and Sale Agreement, (iii) has taken all corporate action necessary to authorize and approve the Purchase and Sale Agreement and the consummation by the Selling Debtors (or the Wind Down Entity) of the transactions contemplated thereby, and (iv) needs no consents or approvals, other than those expressly provided for in the Purchase and Sale Agreement, which may be waived in accordance with the terms therewith.

**Q.      Free and Clear Findings Required by the Purchaser.**  The Purchaser would not have entered into the Purchase and Sale Agreement and would not consummate the Sale if the sale of the Assets to the Purchaser were not, pursuant to section 363(f) of the Bankruptcy Code, free and clear (except as otherwise set forth in the Purchase and Sale Agreement, including, without limitation, with respect to the liabilities, obligations or undertakings assumed by the Purchaser under section 4.6 thereof) of (i) all liens (statutory or otherwise), claims, mortgages, deeds of trust, pledges, charges, security interests, rights of first refusal, hypothecations, encumbrances, royalties, easements, leases or subleases, rights-of-way, encroachments, restrictive covenants, restrictions on transferability or other similar restrictions, rights of offset or recoupment, subleases, leases or conditional sale arrangements (collectively, the "Liens"), (ii) all claims as defined in section 101(5) of the Bankruptcy Code, including all rights or causes of action (whether in law or in equity), Proceedings (as defined in the Stalking Horse Purchase Agreement), warranties, guarantees, indemnities, rights of recovery, setoff, recoupment,

8

indemnity or contribution, obligations, demands, restrictions, indemnification claims or liabilities relating to any act or omission of the Debtors or any other person prior to the Closing, consent rights, options, contract rights, covenants and interests of any kind or nature whatsoever (known or unknown, matured or unmatured, accrued or contingent and regardless of whether currently exercisable), whether arising prior to or subsequent to the commencement of the above-captioned cases, and whether imposed by agreement, understanding, law, equity or otherwise (collectively the "Claims"), and (iii) all debts, liabilities, obligations, contractual rights and claims and labor, employment and pension claims, in each case, whether known or unknown, choate or inchoate, filed or unfiled, scheduled or unscheduled, noticed or unnoticed, recorded or unrecorded, perfected or unperfected, allowed or disallowed, contingent or non-contingent, liquidated or unliquidated, matured or un-matured, material or non-material, disputed or undisputed, whether arising prior to or subsequent to the commencement of these chapter 11 cases, and whether imposed by agreement, understanding, law, equity or otherwise (collectively the "Interests").  Except as otherwise set forth in the Purchase and Sale Agreement (including, without limitation, with respect to the liabilities, obligations or undertakings assumed by the Purchaser under section 4.6 thereof), the Sale shall be free and clear of, and the Purchaser shall not be responsible for, any Liens, Claims or Interests, including, without limitation, in respect of the following: (i) any rights or Claims based on any successor or transferee liability, (ii) any Liens, Claims or Interests that purport to give to any party a right or option to effect any forfeiture, modification, right of first refusal, or termination of the Selling Debtors' (or the Wind Down Entity's) or the Purchaser's interest in the Assets, or any similar rights; (iii) any labor or employment agreements; (iv) mortgages, deeds of trust and security interests; (v) intercompany loans and receivables between the Selling Debtors and other Debtors or any non-Debtor

9

subsidiary; (vi) any pension, multiemployer plan (as such term is defined in Section 3(37) or Section 4001(a)(3) of ERISA), health or welfare, compensation or other employee benefit plans, agreements, practices and programs, including, without limitation, any pension plans of the Debtors or any multiemployer plan to which the Debtors have at any time contributed to or had any liability or potential liability; (vii) any other employee, worker's compensation, occupational disease or unemployment or temporary disability related claim, including, without limitation, claims that might otherwise arise under or pursuant to (a) the Employee Retirement Income Security Act of 1974, as amended, (b) the Fair Labor Standards Act, (c) Title VII of the Civil Rights Act of 1964, (d) the Federal Rehabilitation Act of 1973, (e) the National Labor Relations Act, (f) the Age Discrimination and Employment Act of 1967 and Age Discrimination in Employment Act, as amended, (g) the Americans with Disabilities Act of 1990, (h) the Consolidated Omnibus Budget Reconciliation Act of 1985, as amended, including, without limitation, the requirements of Part 6 of Subtitle B of Title I of ERISA and Section 4980B of the Code and of any similar state law (collectively, "COBRA"), (i) state discrimination laws, (j) state unemployment compensation laws or any other similar state laws, or (k) any other state or federal benefits or claims relating to any employment with the Debtors or any of their predecessors; (l) any bulk sales or similar law; (m) any tax statutes or ordinances, including, without limitation, the Internal Revenue Code of 1986, as amended, and any taxes arising under or out of, in connection with, or in any way relating to the operation of the Assets prior to the Closing; or (n) any unexpired and executory contract or unexpired lease to which a Debtor is a party that is not an Assumed Contract that will be assumed and assigned pursuant to this Order and the Purchase and Sale Agreement. A sale of the Assets other than one free and clear of all Liens, Claims, and Interests would yield substantially less value for the Debtors' estates, with

10

less certainty, than the Sale as contemplated. Therefore, the Sale contemplated by the Purchase and Sale Agreement free and clear of all Liens, Claims and Interests (except as otherwise set forth in the Purchase and Sale Agreement, including, without limitation, with respect to the liabilities, obligations or undertakings assumed by the Purchaser under section 4.6 thereof) is in the best interests of the Debtors, their estates and creditors, and all other parties in interest.

     **R.    Binding and Valid Transfer.** The transfer of the Assets to the Purchaser will be a legal, valid, and effective transfer of the Assets and will vest the Purchaser with all right, title, and interest of the Selling Debtors (or the Wind Down Entity) to the Assets free and clear of all Liens, Claims, and Interests and any liabilities of the Selling Debtors (except as otherwise set forth in the Purchase and Sale Agreement, including, without limitation, with respect to the liabilities, obligations or undertakings assumed by the Purchaser under section 4.6 thereof).

     **S.    Satisfaction of 363(f) Standards.** The Selling Debtors (or the Wind Down Entity) may sell the Assets free and clear of all Liens, Claims and Interests of any kind or nature whatsoever (except as otherwise set forth in the Purchase and Sale Agreement, including, without limitation, with respect to the liabilities, obligations and undertakings assumed by the Purchaser under section 4.6 thereof), because, in each case, one or more of the standards set forth in section 363(f)(1)-(5) of the Bankruptcy Code has been satisfied. Those holders of Liens, Claims and Interests, and non-debtor parties to the Assumed Contracts who did not object, or who withdrew their objections, to the Motion are deemed to have consented pursuant to section 363(f)(2) of the Bankruptcy Code. In all cases, each such person with Liens, Claims or Interests in the Assets is enjoined from taking any action against the Purchaser, the Purchaser's affiliates or any agent of the foregoing to recover any such Lien, Claim or Interest.

**T.    Necessity of Order.**  The Purchaser would not have entered into the Purchase and Sale Agreement and would not consummate the transactions without all of the relief provided for in this Order (including, but not limited to, that the transfer of the Assets to Purchaser be free and clear of all Liens, Claims and Interests).  The consummation of the transactions pursuant to this Order and the Purchase and Sale Agreement is necessary for the Debtors to maximize the value of their estates for the benefit of all creditors and other parties in interest.

**U.    Assumed Contracts.**  The Debtors (or the Wind Down Entity) have demonstrated that it is an exercise of their sound business judgment to sell, assume and assign the unexpired leases and executory contracts listed on Exhibit A-4 or in Paragraph 4.6 of the Purchase and Sale Agreement or otherwise identified in the Notice of Potential Assumption and Assignment (collectively, the "Assumed Contracts", and individually, an "Assumed Contract") to the Purchaser in connection with the consummation of the Sale, and the assumption and assignment of the Assumed Contracts is in the best interests of the Debtors, their estates and creditors, and other parties in interest.  The Assumed Contracts being assigned to the Purchaser are an integral part of the Assets being purchased by the Purchaser, and, accordingly, such assumption and assignment of the Assumed Contracts and the liabilities associated therewith are reasonable and enhance the value of the Debtors' bankruptcy estates.

**V.    Cure and Adequate Assurance.**  The Selling Debtors (or the Wind Down Entity) have cured or the Selling Debtors (or the Wind Down Entity) have demonstrated their ability to cure any default with respect to any act or omission that occurred prior to the Closing under any of the Assumed Contracts, within the meaning of section 365(b)(1)(A) of the Bankruptcy Code. The Proposed Cure Payments (as set forth in the Notice of Potential Assumption and Assignment) or any other cure amount reached by agreement after an objection to the Proposed

12

Cure Payments (each, a "Cure Payment Objection") are deemed the amounts necessary to "cure" within the meaning of section 365(b)(1) of the Bankruptcy Code all "defaults" within the meaning of section 365(b) of the Bankruptcy Code under such Assumed Contracts. The Purchaser's promise to perform the obligations under the Assumed Contracts arising after the Closing shall constitute adequate assurance of its future performance of and under the Assumed Contracts, within the meaning of sections 365(b)(1) and 365(f)(2) of the Bankruptcy Code. All counterparties to the Assumed Contracts who did not file a Cure Payment Objection or an objection to the assumption and assignment of the Assumed Contracts prior to the Sale Hearing, are deemed to consent to the assumption by the Debtors of their respective Assumed Contract and the assignment thereof to the Purchaser. The filed objections of all counterparties to the Assumed Contracts were heard at the Sale Hearing (to the extent not withdrawn), were considered by the Court, and are overruled on the merits with prejudice. The Court finds that with respect to all such Assumed Contracts the payment of the Proposed Cure Payments in accordance with the terms of the Purchase and Sale Agreement is appropriate and is deemed to fully satisfy the Debtors' obligations under section 365(b) of the Bankruptcy Code. Accordingly, all of the requirements of section 365(b) of the Bankruptcy Code have been satisfied for the assumption and the assignment by the Selling Debtors to the Purchaser of each of the Assumed Contracts. To the extent any Assumed Contract is not an executory contract within the meaning of section 365 of the Bankruptcy Code, it shall be transferred to the Purchaser in accordance with the terms of this Order that are applicable to the Assets.

**W.   Unenforceability of Anti-Assignment Provisions.** Anti-assignment provisions in any Assumed Contract shall not restrict, limit, or prohibit the assumption, assignment, and sale

of the Assumed Contracts and should be deemed and found to be unenforceable anti-assignment provisions within the meaning of section 365(f) of the Bankruptcy Code.

**X.    Final Order.**  This Order constitutes a final order within the meaning of 28 U.S.C. § 158(a).  Notwithstanding Bankruptcy Rules 6004(h) and 6006(d), the Court expressly finds that there is no just reason for delay in the implementation of this Order and expressly directs entry of judgment as set forth herein.

**Y.**    Entry of this Order is in the best interests of the Debtors, the Debtors' estates, their creditors, and other parties in interest.

## ORDER

**ACCORDINGLY, IT IS HEREBY ORDERED, ADJUDGED, DECREED, AND DETERMINED THAT:**

1.    **Findings of Fact and Conclusions of Law:**  The above-referenced findings of fact and conclusions of law are hereby incorporated by reference as though fully set forth herein and shall constitute findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable herein by Bankruptcy Rule 9014.  To the extent that any finding of fact shall be determined to be a conclusion of law, it shall be deemed so, and vice versa.

2.    **Motion Granted.**  The Motion is granted and the relief requested therein with respect to the Sale is granted and approved in its entirety, as set forth herein.

3.    **Objections are Overruled.**  Any objections to the entry of this Order or to the relief granted herein or the relief requested in the Motion, including any objections to the Proposed Cure Payments or the assumption and assignment of any Assumed Contracts, that have not been withdrawn, waived, or settled, or not otherwise resolved pursuant to the terms hereof, if any, hereby are denied and overruled on the merits with prejudice.

**4.    Approval.**  The Purchase and Sale Agreement, and all the terms and conditions thereof, is approved.  Pursuant to sections 105, 363, and 365 of the Bankruptcy Code, the Selling Debtors (or the Wind Down Entity) are authorized to perform their obligations under, and comply with the terms of, the Purchase and Sale Agreement and consummate the Sale and the related transactions pursuant to, and in accordance with, the terms and conditions of the Purchase and Sale Agreement and this Order.  The Selling Debtors (or the Wind Down Entity) are authorized to execute and deliver, and empowered to perform under, consummate, and implement, the Purchase and Sale Agreement, together with all additional instruments and documents that the Selling Debtors (or the Wind Down Entity) or the Purchaser deem necessary or appropriate to implement the Purchase and Sale Agreement and effectuate the transactions contemplated therein, and to take all further actions as may reasonably be required by the Purchaser for the purpose of assigning, transferring, granting, conveying, and conferring to the Purchaser or reducing to Purchaser's possession the Assets or as may be necessary or appropriate to the performance of the obligations as contemplated by the Purchase and Sale Agreement.

**5.    Binding Effect of Order.**  This Order and the Purchase and Sale Agreement shall be binding in all respects upon all known and unknown creditors of, and holders of equity security interests in, any Debtor, including any holders of Liens, Claims and Interests, all counterparties to the Assumed Contracts, all successors and assigns of the Purchaser, each Debtor and their Affiliates and subsidiaries, the Assets, the Wind Down Entity, and any trustees appointed in the Debtors' Chapter 11 Cases or upon a conversion to cases under chapter 7 of the Bankruptcy Code and this Order shall not be subject to amendment or modification and the Purchase and Sale Agreement shall not be subject to rejection.

**6.    Injunction.**  All persons and entities are prohibited and enjoined from taking any action to adversely affect or interfere with the ability of the Selling Debtors (or the Wind Down Entity) to transfer the Assets to the Purchaser in accordance with the Purchase and Sale Agreement and this Order.  Except as otherwise set forth in the Purchase and Sale Agreement (including, without limitation, with respect to the liabilities, obligations or undertakings assumed by the Purchaser under section 4.6 thereof), following the Closing, all Persons (including, but not limited to, the Debtors, the Wind Down Entity, creditors, investors, current and former employees and shareholders, administrative agencies, governmental units, secretaries of state, federal, state, and local officials, including those maintaining any authority relating to any environmental, health and safety laws, and the successors and assigns of each of the foregoing) holding Liens, Claims or Interests in the Assets or against the Selling Debtors in respect of the Assets of any kind or nature whatsoever shall be, and hereby are, forever barred, estopped, and permanently enjoined from asserting, prosecuting, or otherwise pursuing any Liens, Claims or Interests of any kind or nature whatsoever against the Purchaser or any Affiliate of the Purchaser or any of their respective property, successors and assigns, or the Assets, as an alleged successor or on any other grounds.  Except as otherwise set forth in the Purchase and Sale Agreement (including, without limitation, with respect to the liabilities, obligations or undertakings assumed by the Purchaser under section 4.6 thereof), no Person shall assert, and the Purchaser and the Assets shall not be subject to, any defaults, breaches, counterclaims, offsets, defenses (whether contractual or otherwise, including, without limitation, any right of recoupment), liabilities, claims and interests, or basis of any kind or nature whatsoever to delay, defer, or impair any right of the Purchaser or the Selling Debtors (or the Wind Down Entity), or any obligation of any other party, under or with respect to, any Assets, with respect to any act or omission that

16

occurred prior to the Closing or with respect to any other agreement or any obligation of the Debtors that is not a liability that was assumed by the Purchaser under the Purchase and Sale Agreement.

7.    **General Assignment.**  Upon the Closing, this Order shall be construed and shall constitute for any and all purposes a full and complete general assignment, conveyance, and transfer of the Selling Debtors' (or the Wind Down Entity's) interests in the Assets and a bill of sale transferring good and marketable title in the Assets to the Purchaser free and clear of all Liens, Claims and Interests (except as otherwise set forth in the Purchase and Sale Agreement, including, without limitation, with respect to the liabilities, obligations or undertakings assumed by the Purchaser under section 4.6 thereof).    Each and every federal, state, and local governmental agency, quasi-agency, or department is hereby directed to accept any and all documents and instruments necessary and appropriate to consummate the transactions.

8.    **Transfer Free and Clear.**  Pursuant to sections 105(a) and 363(f) of the Bankruptcy Code, the Assets shall be transferred to the Purchaser as required under the Purchase and Sale Agreement, and except as otherwise set forth in the Purchase and Sale Agreement (including, without limitation, with respect to the liabilities, obligations or undertakings assumed by the Purchaser under section 4.6 thereof), such transfer shall be free and clear of all Liens, Claims, and Interests of any Person, including, without limitation, all such Liens, Claims, and Interests specifically enumerated in paragraph Q of this Order, whether arising by agreement, by statute or otherwise and whether occurring or arising before, on or after the Petition Date, whether known or unknown, occurring or arising prior to such transfer, with all such Liens, Claims and Interests to attach to the proceeds of the Sale ultimately attributable to the property against or in which the holder of a Lien, Claim or Interest claims or may claim a Lien, Claim or

17

Interest, in the order of their priority, with the same validity, force, and effect which they now have, subject to any claims and defenses the Selling Debtors (or the Wind Down Entity) may possess with respect thereto.

9.     **Valid Transfer.**   The transfer of the Assets to the Purchaser pursuant to the Purchase and Sale Agreement constitutes a legal, valid, and effective transfer of the Assets and shall vest the Purchaser with all right, title, and interest of the Selling Debtors (or the Wind Down Entity) in and to the Assets free and clear of all Liens, Claims and Interests of any kind or nature whatsoever.

10.     **Exculpation and Release.**   Neither the Purchaser nor any of its affiliates, successors, and assigns, shall have, or incur any liability to, or be subject to any action by, the Debtors or any of their predecessors, successors, or assigns, arising out of the negotiation, investigation, preparation, execution, or delivery of the Purchase and Sale Agreement and the entry into and consummation of the Sale, except as expressly provided in the Purchase and Sale Agreement and this Order.

11.     **Direction to Release Interests.**   Upon the Closing, each of the Selling Debtors' creditors and any other holder of a Lien, Claim or Interest is authorized and directed, without cost to the Debtors, Wind Down Entity, or Purchaser to execute such documents and take all other actions as may be necessary to release its Lien, Claim or Interest in the Assets, if any, as such Lien, Claim or Interest may have been recorded or may otherwise exist. If any person or entity that has filed financing statements, mortgages, mechanic's liens, lis pendens, or other documents or agreements evidencing a Lien, Claim or Interest in the Selling Debtors or the Assets shall not have delivered to the Selling Debtors prior to the Closing, in proper form for filing and executed by the appropriate parties, termination statements, instruments of satisfaction,

18

releases of all Liens, Claims and Interests, which the person or entity has with respect to the Selling Debtors or the Assets or otherwise, then (i) the Debtors (or the Wind Down Entity) are authorized to execute and file such statements, instruments, releases, and other documents on behalf of the person or entity with respect to the Selling Debtors or the Assets, and (ii) the Purchaser is authorized to file, register, or otherwise record a certified copy of this Order, which shall constitute conclusive evidence of the release of all Liens, Claims and Interests of any kind or nature whatsoever in the Selling Debtors or the Assets.  Each and every federal, state, and local governmental agency or department is hereby directed to accept any and all documents and instruments necessary and appropriate to consummate the transactions contemplated by the Purchase and Sale Agreement, including, without limitation, recordation of this Order.  This Order shall be binding upon and shall govern the acts of all Persons including without limitation, all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies, governmental departments, secretaries of state, federal, state, and local officials, and all other Persons who may be required by operation of law, the duties of their office, or contract, to accept, file, register, or otherwise record or release any documents or instruments, or who may be required to report or insure any title or state of title in or to any of such assets or other property interests.

    **12.  No Interference.**  Following the Closing of the Sale, no holder of any Lien, Claim or Interest in the Assets shall interfere with the Purchaser's title to, or use and enjoyment of, the Assets based on, or related to, any such Lien, Claim or Interest, or based on any actions the Debtors may take in their chapter 11 cases.

**13.  Surrender of Possession.**  All entities that are currently, or on the Closing may be, in possession of some or all of the Assets are hereby directed to surrender possession of the Assets to the Purchaser on the Closing, unless the Purchaser otherwise agrees.

**14.  Post-Closing Actions and Transactions.**  The Debtors (and the Wind Down Entity) and the Purchaser, and each of their respective officers, employees, and agents, will be authorized and empowered to take all actions and execute and deliver any and all documents and instruments that either the Debtors (or the Wind Down Entity) or the Purchaser deem necessary or appropriate to implement and effectuate the terms of the Purchase and Sale Agreement and this Order.  Further, effective as of the Closing, the Purchaser, its successors and assigns, shall be designated and appointed the Selling Debtors' (or the Wind Down Entity's) true and lawful attorney and attorneys, with full power of substitution, in the Selling Debtors' (or the Wind Down Entity's) name and stead, its successors and assigns, to demand and receive any and all of the Assets, and from time to time institute and prosecute in the name of the Purchaser, for the benefit of the Purchaser, its successors and assigns, any and all proceedings at law, in equity, or otherwise, that the Purchaser, its successors or assigns, may deem proper for the collection or reduction to possession of any of the Assets, and to do all acts and things with respect to the Assets that the Purchaser, its successors and assigns, shall deem desirable.  All of the foregoing powers granted to the Purchaser are coupled with an interest and are irrevocable by the Selling Debtors (or Wind Down Entity).

**15.  Sale is Self-Executing**.  The Sale is self-executing, and neither the Selling Debtors nor the Purchaser shall be required to execute or file releases, termination statements, assignments, consents, or other instruments to effectuate, consummate, and implement the provisions of this Order.

**16.   No Discriminatory Treatment.**   To the extent provided by section 525 of the Bankruptcy Code, no governmental unit may deny, revoke, suspend, or refuse to renew any permit, license, or similar grant relating to the operation of the Assets sold, transferred, or conveyed to the Purchaser on account of the filing or pendency of these chapter 11 cases or the consummation of the transactions contemplated by the Purchase and Sale Agreement.

**17.   Assumption and Assignment of Contracts.**   Pursuant to sections 105(a), 363, and 365 of the Bankruptcy Code and subject to and conditioned upon the Closing of the Sale, the Selling Debtors' (or the Wind Down Entity's) sale, assumption and assignment to the Purchaser of the Assumed Contracts is approved, and the requirements of section 365(b)(1) of the Bankruptcy Code with respect thereto are deemed satisfied.

**18.**   The Debtors (or the Wind Down Entity) are authorized and directed in accordance with sections 105(a) and 365 of the Bankruptcy Code to (i) assume and assign to the Purchaser, effective as of the Closing, as provided by, and in accordance with, the Bidding Procedures Order and the Purchase and Sale Agreement, the Assumed Contracts free and clear of all Liens, Claims and Interests of any kind or nature whatsoever (except as otherwise set forth in the Purchase and Sale Agreement, including, without limitation, with respect to the liabilities, obligations or undertakings assumed by the Purchaser under section 4.6 thereof), and (ii) execute and deliver to the Purchaser such documents or other instruments as the Purchaser reasonably deems necessary to assign and transfer the Assumed Contracts to the Purchaser.

**19.**   The Assumed Contracts shall be transferred and assigned to, pursuant to the Bidding Procedures Order and the Purchase and Sale Agreement, and thereafter remain in full force and effect for the benefit of, the Purchaser, notwithstanding any provision in any such Assumed Contract (including those of the type described in sections 365(b)(2), (e)(1), and (f) of

21

the Bankruptcy Code) that prohibits, restricts, or conditions such assignment or transfer. The Debtors (and the Wind Down Entity) shall be relieved from any further liability with respect to the Assumed Contracts after such assumption and assignment to the Purchaser. The Debtors (or the Wind Down Entity) may assign each Assumed Contract in accordance with sections 363 and 365 of the Bankruptcy Code, and any provisions in any Assumed Contracts that prohibit or condition the assignment of such Assumed Contracts or terminate, recapture, impose any penalty, condition renewal or extension, or modify any term or condition upon the assignment of such Assumed Contracts, constitute unenforceable anti-assignment provisions which are void and of no force and effect. All other requirements and conditions under sections 363 and 365 of the Bankruptcy Code for the assumption by the Debtors (or the Wind Down Entity) and assignment to the Purchaser of each Assumed Contract have been satisfied.

    **20.**   All defaults and all other obligations or Liabilities under any Assumed Contract occurring, arising or accruing prior to the date of the assignment or transfer to the Purchaser shall be deemed cured or satisfied upon payment by the Purchaser of the Proposed Cure Payment, solely to the extent provided for in the Purchase and Sale Agreement, or any other cure amount reached by agreement after a Cure Payment Objection, and, without limiting the foregoing, no effect shall be given to any default of the type set forth in section 365(b)(2) of the Bankruptcy Code, or the type of default concerning an unexpired lease of real property described in section 365(b)(1) of the Bankruptcy Code whether or not such Assumed Contract is an executory contract within the meaning of section 365 of the Bankruptcy Code. The Proposed Cure Payment amounts listed on the Notice of Potential Assumption and Assignment, or any other cure amount reached by agreement after a Cure Payment Objection, reflect the sole amounts necessary under section 365(b) of the Bankruptcy Code to cure all monetary defaults under the

Assumed Contracts, and no other amounts are or shall be due to the non-debtor parties in connection with the assumption by the Debtors and assignment to the Purchaser of the Assumed Contracts. For the avoidance of doubt, section 4.6 of the Purchase and Sale Agreement shall not be construed to require the Purchaser to pay any cure amounts with respect to any Assumed Contract other than the Proposed Cure Payments.

21.   Except as provided in the Purchase and Sale Agreement or this Order, after the Closing, the Debtors, their estates, and the Wind Down Entity shall have no further liabilities or obligations with respect to any Assumed Contract, and all holders of such claims arising from and after Closing under any Assumed Contract are forever barred and estopped from asserting any claims under any Assumed Contract against the Debtors, their estates, and the Wind Down Entity.

22.   The failure of the Debtors (or the Wind Down Entity) or the Purchaser to enforce at any time one or more terms or conditions of any Assumed Contract shall not be a waiver of such terms or conditions, or of the Debtors' and the Purchaser's rights to enforce every term and condition of the Assumed Contracts.

23.   **No Successor Liability.** Except for the liabilities assumed under the Purchase and Sale Agreement (including, without limitation, the liabilities, obligations or undertakings assumed under section 4.6 thereof) and Cure Payments, to be paid solely to the extent provided for in the Purchase and Sale Agreement, neither the Purchaser, nor any of its successors or assigns, or any of their respective affiliates shall have any liability for any Lien, Claim or Interest that arose or occurred prior to the Closing, or otherwise is assertable against the Debtors (or the Wind Down Entity) or is related to the Assets prior to the Closing. The Purchaser is not and shall not be deemed a "successor" to the Debtors, their estates or the Wind Down Entity (other

23

than, for the Purchaser, with respect to any obligations as an assignee under the Assumed Contracts arising after the Closing), have, de facto or otherwise, merged with or into the Debtors or the Wind Down Entity or be an alter ego or mere continuation or substantial continuation of the Debtors, the enterprise of the Debtors, or the Wind Down Entity under any theory of law or equity as a result of any action taken in connection with the Purchase and Sale Agreement or any of the transactions or documents ancillary thereto or contemplated thereby or in connection with the acquisition of the Assets.

24.     Without limiting the foregoing, and except as otherwise set forth in the Purchase and Sale Agreement (including, without limitation, with respect to the liabilities, obligations or undertakings assumed by the Purchaser under section 4.6 thereof), the Purchaser shall not have any successor, transferee, derivative, or vicarious liabilities of any kind or character for any Liens, Claims or Interests, including under any theory of successor or transferee liability, de facto merger or continuity, whether known or unknown as of the Closing, now existing or hereafter arising, whether fixed or contingent, asserted or unasserted, liquidated or unliquidated, with respect to any of the following: (i) any foreign, federal, state, or local revenue, pension, ERISA, tax, labor, employment, antirust, environmental, or other law, rule, or regulation (including without limitation filing requirements under any such laws, rules or regulations); (ii) under any products liability law, rule, regulation, or doctrine with respect to the Debtors' liability under such law, rule, regulation, or doctrine, or under any product warranty liability law or doctrine; (iii) any employment or labor agreements, consulting agreements, severance arrangements, change-in-control agreements, or other similar agreement to which the Debtors are a party; (iv) any pension, welfare, compensation, or other employee benefit plans, agreements, practices, and programs, including, without limitation, any pension plan of the Debtors; (v) the

cessation of the Debtor's operations, dismissal of employees, or termination of employment or labor agreements or pension, welfare, compensation, or other employee benefit plans, agreements, practices and programs, obligations that might otherwise arise from or pursuant to the (a) Employee Retirement Income Security Act of 1974, as amended, (b) the Fair Labor Standards Act, (c) Title VII of the Civil Rights Act of 1964, (d) the Federal Rehabilitation Act of 1973, (e) the National Labor Relations Act, (f) the Age Discrimination and Employment Act of 1967, (g) the Americans with Disabilities Act of 1990, or (h) COBRA; (vi) environmental liabilities, debts, Claims, or obligations arising from conditions first existing on or prior to the Closing (including, without limitation, the presence of hazardous, toxic, polluting, or contamination substances or wastes), which may be asserted on any basis, including, without limitation, under the Comprehensive Environmental Response, Compensation and Liability Act, 42 U.S.C. § 9601 et seq.; (vii) any liabilities, debts, or obligations of or required to be paid by the Debtors (or the Wind Down Entity) for any taxes of any kind for any period; (viii) any liabilities, debts, commitments, or obligations for any taxes relating to the operation of the Assets prior to the Closing; (ix) any bulk sale law; and (x) any litigation.

      **25.  Fair Consideration.**  The consideration provided by the Purchaser for the Assets under the Purchase and Sale Agreement shall be deemed to constitute reasonably equivalent value and fair consideration under the Bankruptcy Code and under the laws of the United States, any state, territory, possession, or the District of Columbia.  The Sale may not be avoided under section 363(n) of the Bankruptcy Code.  The Purchase and Sale Agreement was not entered into, and the Sale is not being consummated, for the purpose of hindering, delaying, or defrauding creditors of the Debtors under the Bankruptcy Code or under the laws of the United States, any state, territory, possession thereof, or the District of Columbia, or any other applicable law.

Neither the Selling Debtors (or the Wind Down Entity) nor the Purchaser have entered into the Purchase and Sale Agreement or any agreement contemplated thereby or are consummating the Sale with any fraudulent or otherwise improper purpose, including, without limitation, to evade any pension liabilities.  No other person or entity or group of persons or entities has offered to purchase the Assets for an amount that would provide greater value to the Debtors and their estates (or the Wind Down Entity) than the value provided by the Purchaser.  The Court's approval of the Motion and the Purchase and Sale Agreement are in the best interests of the Wind Down Entity, the Debtors, the bankruptcy estates of the Debtors, their creditors and all other parties in interest.

     **26.    Retention of Jurisdiction.**    This Court retains jurisdiction, pursuant to its statutory powers under 28 U.S.C. § 157(b)(2), to, among other things, interpret, implement, and enforce the terms and provisions of this Order, all amendments thereto, and any waivers and consents thereunder, including, but not limited to, retaining jurisdiction to (i) compel delivery of the Assets to the Purchaser; (ii) interpret, implement, and enforce the provisions of this Order; (iii) protect the Purchaser, any of the Purchaser's affiliates, or any agent of the foregoing, against any Liens, Claims or Interests against the Debtors or the Assets of any kind or nature whatsoever and (iv) enter any order under sections 363 and 365 of the Bankruptcy Code.

     **27.    Good Faith Purchaser.**    The transactions contemplated by the Purchase and Sale Agreement are undertaken by the Purchaser without collusion and in good faith, as that term is used in section 363(m) of the Bankruptcy Code, and, accordingly, the reversal or modification on appeal of the authorization provided in this Order to consummate the transactions shall not affect the validity of the transactions (including the assumption and assignment of any of the Assumed

Contracts). The Purchaser is a purchaser in good faith of the Assets and is entitled to all the protections afforded by section 363(m) of the Bankruptcy Code.

      **28.    No Bulk Law Application.**  No bulk sales law or similar law shall apply in any way to the transactions contemplated by the Sale, the Purchase and Sale Agreement, the Motion, and this Order.

      **29.    Broker's Commission.**  Upon consummation of the Sale, the Debtors (or the Wind Down Entity) are authorized to pay a commission in the amount of $455,000, or 2% of the consideration received by the Debtors (or the Wind Down Entity), to Mitchen Anderson from the proceeds of the Sale.

      **30.    Inconsistencies with Prior Orders, Pleadings or Agreements**.  To the extent this Order is inconsistent with any prior order or filing with respect to the Motion in these chapter 11 cases, the terms of this Order shall govern and any prior orders shall be deemed amended or otherwise modified to the extent required to permit consummation of the Sale. To the extent there is any inconsistency between the terms of this Order and the terms of the Purchase and Sale Agreement (including all ancillary documents executed in connection therewith), the terms of this Order shall govern.

      **31.    Failure to Specify Provisions.**  The failure to specifically include any particular provisions of the Purchase and Sale Agreement in this Order shall not diminish or impair the effectiveness of such provision, it being the intent of the Court that the Purchase and Sale Agreement be authorized and approved in its entirety.

      **32.    Non-Material Modifications.**  The Purchase and Sale Agreement and any related agreements, documents, or other instruments may be modified, amended, or supplemented by the parties thereto and in accordance with the terms thereof, without further order of the Court,

provided that any such modification, amendment, or supplement does not, based on the Debtors' judgment, have any adverse effect on the Debtors' estates.

**33. No Stay or Order.** Notwithstanding the provisions of Bankruptcy Rules 6004(h) and 6006(d), this Order shall not be stayed for fourteen (14) days after its entry and shall be effective immediately upon entry, and the Selling Debtors (or the Wind Down Entity) and the Purchaser are authorized to close the transactions immediately upon entry of this Order. Time is of the essence in closing the transactions referenced herein, and the Selling Debtors (or the Wind Down Entity) and the Purchaser intend to close the transactions as soon as practicable. This Order is a Final Order and the period in which an appeal must be filed shall commence upon the entry of this Order. Any party objecting to this Order must exercise due diligence in filing an appeal and pursuing a stay, or risk its appeal being foreclosed as moot.

**34. Headings:** Headings utilized in this Order are for convenience of reference only, and do not constitute a part of this Order for any other purpose

**35. Time Periods.** All time periods set forth in this Order shall be calculated in accordance with Bankruptcy Rule 9006(a).

**36. Nonseverability.** The provisions of this order are nonseverable and mutually dependent.

Dated: _____, 2017
Wilmington, Delaware

THE HONORABLE KEVIN J. CAREY
UNITED STATES BANKRUPTCY JUDGE