IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In Re: | ) ) | |
| Hercules Offshore, Inc., et al., | ) ) | Chapter 11 |
| Debtors. | ) ) ) | Case No. 16-11385 (KJC) Jointly Administered |
| Hercules Offshore, Inc., et al. | ) ) ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | D.I. 379 |
| Axon Pressure Products, Inc., Axon Energy Products AS, and Axon EP, Inc., | ) ) ) ) | |
| Defendants. | ) ) | |

## **OPINION**[1]

**BY:  KEVIN J. CAREY, UNITED STATES BANKRUPTCY JUDGE**

Before the Court is the objection of Hercules Offshore, Inc. and its debtor affiliates (collectively, the "Debtors") to the proof of claim filed by Axon Pressure Products, Inc., Axon Energy Products AS And Axon EP, Inc. (collectively, "Axon"). For the following reasons, I will overrule the Debtors' objection.

### I.   **Background:**

The Debtors were established to provide shallow-water drilling and marine services to the oil and natural gas exploration and production industry globally.[2] On June 5, 2016 (the "Petition

---

[1] This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334 and 157(a). This is a core proceeding pursuant to 28 U.S.C. 157(b)(1) and (b)(2)(B). Any capitalized terms not defined in this Opinion shall have the definitions set forth in the Plan.

[2] Disclosure Statement at 1 (D.I. 19).

Date"), the Debtors filed voluntary petitions for relief in this Court under chapter 11 of the Bankruptcy Code. The HERO Liquidating Trust (the "Liquidating Trust") was established pursuant to the Debtors' Modified Joint Prepackaged Chapter 11 Plan (Incorporating Mediation Settlement) (D.I. 436) (the "Plan"), which was confirmed on November 15, 2016 (D.I. 486) (the "Confirmation Order").

On July 12, 2016, Axon filed the claims set forth below (the "Axon Claims"):

| Claim Number | Claimant | Debtor Entity |
|---|---|---|
| 126 | Axon EP | SD Drilling |
| 128 | Axon EP | Hercules Offshore |
| 130 | Axon Energy | SD Drilling |
| 131 | Axon Energy | Hercules Drilling |
| 132 | Axon Energy | Hercules Offshore |
| 133 | Axon Pressure | Hercules Offshore |
| 177 | Axon Pressure | Hercules Drilling |
| 179 | Axon Pressure | SD Drilling |
| 184 | Axon EP | Hercules Drilling |

Each of the Axon Claims asserts a contingent, unliquidated claim in the amount of $103,532,390.03, plus attorneys' fees, on account of potential losses incurred in connection with a well control incident (a fire) on the *Hercules 265* rig that occurred approximately 40 miles off the coast of Louisiana in July 2013. The Axon Claims are based on the contractual and common law indemnity claims and common law contribution claims that the Axon Defendants (as defined below) have asserted against the Hercules Defendants (as defined below).[3]

---

[3] On September 19, 2016, the Debtors filed the Debtors' First Omnibus (Non-Substantive) Objection To The Claims Of Axon Pressure Products, Inc., Axon Energy Products AS And Axon EP, Inc., Under 11 U.S.C. § 502(e)(1)(B) (D.I. 379) (the "Claims Objection").

The Confirmation Order

On July 27, 2016, Axon filed the Objection of Axon Pressure Products, Inc., Axon EP, Inc. and Axon Energy Products AS to (I) the Debtors' Motion for Entry of an Order Establishing the Amount of the Disputed Claims Reserve and (II) the Debtors' Joint Prepackaged Chapter 11 Plan (D.I. 245) (the "Axon Objection").

On September 24, 2016, the Debtors and Axon reached an agreement resolving the Axon Objection, which was embodied in the Confirmation Order. Specifically, the Confirmation Order provides as follows with respect to the Axon Claims:

> To the extent any Claims of [Axon] against the Debtors or any of the Non-Debtors Subsidiaries, including without limitation, Claims for contribution and indemnity against Hercules Offshore, Inc., Hercules Drilling Company, LLC and/or SD Drilling LLC (collectively "Hercules") become Allowed Claims, the sole sources of recovery for Axon with respect to such Claims shall be: (1) a $2.0 million claims reserve for Axon; (2) Hercules's insurance policies, to the extent of the coverage and limits provided in those policies; and (3) recoveries, if any, Hercules obtains from [Walter (defined *supra*)] or its insurers based on: (a) any and all indemnity rights, including rights of indemnity for defense, to be held harmless, and for breach of release, but not including any recovery to Hercules from Walter or its insurers for Hercules's own fees and costs (including, without limitation, fees and expenses of legal advisors); and/or (b) additional insured rights Hercules has against Walter and its insurers arising out of the blowout of the A-3 Well located in South Timbalier Block 220, on the Outer Continental Shelf in the Gulf of Mexico, which claims for recoveries, if any, Hercules undertakes to continue to prosecute in good faith and with due diligence. In addition, notwithstanding the disallowance or expungement of the proofs of Claim filed by Axon following prosecution of the section 502(e)(1)(b) objection filed by Hercules, Axon shall still be entitled to the recoveries, if any, provided in (2) and (3) above in this paragraph. Axon otherwise agrees that the release provisions contained in the Plan shall be binding on Axon.[4]

---

[4] Confirmation Order at ¶ 43. As a result of the agreement between the Debtors and Axon and the terms of the Confirmation Order, the Court's ruling on the Claim Objection will determine whether the Liquidating Trust is required to continue to maintain the $2 million claims reserve for Axon. However, it will not impact the other sources of recovery provided to Axon under paragraph 43 of the Confirmation Order or otherwise affect the terms of the resolution embodied in paragraph 43 of the Confirmation Order.

The Incident

In early 2013, the *Hercules 265*, one of the Debtors' rigs, was chartered to Walter Oil and Gas ("Walter"), pursuant to the Offshore Daywork Drilling Contract, (the "Drilling Contract"). Walter's working interest partners were Tana Exploration Company, LLC ("Tana") and Helis Oil & Gas Company, L.L.C. ("Helis"). On July 23, 2013, the crew of *Hercules 265* experienced a well control event with respect to the A-3 Well (the "Incident"). During operations involving the *Hercules 265*, a blowout occurred, and the well began emitting natural gas. On August 23, 2013, the natural gas flowing from the A-3 Well ignited aboard the *Hercules 265*. The *Hercules 265* was seriously damaged by the fire.

On July 22, 2014, Walter, Tana, Helis and certain of Walter's insurers (collectively, the "Walter Parties") filed suit in the United States District Court for the Southern District of Texas (the "District Court") seeking subrogation for the damages incurred as a result of the Incident (the "Subrogation Action"). The Walter Parties assert damages in the amount of approximately $103 million against, among others, Axon Pressure and Axon EP (collectively, the "Axon Defendants"), which entities were alleged to have refurbished the blow out protector, a key component on the *Hercules 265*.

Importantly, while the Incident occurred on one of the Debtors' rigs, the Walter Parties did not name any of the Debtors as defendants in the Subrogation Action. The Walter Parties did not sue the Debtors because they contractually agreed to release and indemnify the Debtors. The contract between the Walter Parties and the Debtors provides that the Walter Parties "shall be solely responsible and assume[ ] liability for all consequences of operations by both parties." And, the contract provides that the underlying plaintiff shall "be responsible for and hold harmless and indemnify" Debtors for damages to the underlying plaintiffs' "Equipment or Property," "The

Hole," relevant "Pollution and Contamination," "Debris Removal and Cost of Control," and "Underground Damage."

The contract further provides that:

> the phrase "be responsible for and hold harmless and indemnify" or other similar words of release or indemnity (including limitation or exclusion of damages and all other exculpatory provisions) in this Contract including without limitation Paragraphs 605, 606, 805 and 901 through 910 hereof means that the indemnifying party shall release, indemnify, hold harmless and defend (including payment of reasonable attorney's fees and costs of litigation) the indemnified party from and against any and all claims, demands, causes of action…[5]

In response to the Subrogation Action, the Axon Defendants filed a third-party complaint (the "Third-Party Complaint") asserting contractual and common law indemnity claims and common law contribution claims against Debtor Hercules Offshore, Inc. ("Hercules Offshore") and Debtor Hercules Drilling Company, LLC ("Hercules Drilling") for losses that may be incurred in connection with the Incident.[6]

Hercules Offshore and Hercules Drilling (collectively, the "Hercules Defendants") filed cross claims against Walter seeking indemnity from Walter for losses incurred as a result of the Axon Defendants' claims against the Hercules Defendants.[7] The Subrogation Action was stayed

---

[5] Accordingly, the Walter Parties agreed to indemnify the Debtors as to all damages, other than damages to the Debtors' personal property, related to the Incident. The Walter Parties also agreed to release Debtors for those damages. Moreover, the Debtors listed Walter as a holder of a contingent, unliquidated and disputed claim in the Modified Schedule E/F filed by SD Drilling (D.I. 30). Walter did not, however, file a Proof of Claim in the chapter 11 cases.

[6] The Axon Defendants allege that Hercules Offshore and Hercules Drilling are contractually obligated to indemnify the Axon Defendants pursuant to the terms of (i) a Master Service Agreement (the "Seahawk MSA"), between Axon Energy and Seahawk Drilling, Inc. (the previous owner of the *Hercules 265* whose assets were acquired by Hercules Offshore and Debtor SD Drilling, LLC ("SD Drilling" and, together with Hercules Offshore and Hercules Drilling, the "Hercules Defendants")), and/or (ii) a Master Service Contract, between Axon and Hercules Drilling (the "Hercules MSA"). By the Third Party Complaint, the Axon Defendants also allege that Hercules Offshore and Hercules Drilling are responsible for the Incident.

[7] The contractual basis for such indemnity claims against Walter include (i) the Drilling Contract and/or (ii) the Offshore Daywork Drilling Contract – U.S. Drilling Unit Hercules 350, dated December 9, 2011, between Walter and Hercules Drilling (the "350 Contract").

by virtue of the commencement of the chapter 11 cases. On July 8, 2014, SD Drilling filed a limitation of liability suit, which was transferred to the District Court (the "Limitation Action" and, together with the Subrogation Action, the "Pending Litigation"). Pursuant to the Limitation Action, SD Drilling seeks exoneration from or limitation of liability as to all claims arising out of the Incident.

On January 9, 2015, the Axon Defendants filed claims in the Limitation Action against SD Drilling seeking contractual indemnity pursuant to the Seahawk MSA for losses arising out of the Subrogation Litigation, indemnity at law from the *Hercules 265 in rem* and SD Drilling *in personam*, and common law contribution.

## II.   Discussion:

In general, the burden of proof related to claims and claims' objections shifts between the proponent of, and objector to, a claim.[8] If a claimant alleges facts sufficient to support its claim, then the claim is entitled to *prima facie* validity.[9] A party objecting to a claim that is *prima facie* valid bears the burden to produce sufficient evidence that discredits at least one of the allegations essential to the claim's legal sufficiency.[10] If the objector "produces sufficient evidence to negate one or more of the sworn facts in the proof of claim," the burden to demonstrate an entitlement to payment on its claim shifts back to the claimant.[11]

---

[8] *In re Allegheny Int'l, Inc.*, 954 F.2d 167, 173 (3d Cir.1992); *In re Smurfit-Stone Container Corp.*, 444 B.R. 111, 117 (Bankr. D. Del. 2011); *In re United Cos. Fin. Corp.*, 267 B.R. 524, 527 (Bankr. D. Del. 2000).

[9] *See Allegheny*, 954 F.2d at 173 ("[A] claim that alleges facts sufficient to support a legal liability to the claimant satisfies the claimant's initial obligation to go forward."); 11 U.S.C. § 502(a) ("A claim or interest, proof of which is filed under section 501 of this title, is deemed allowed, unless a party in interest ... objects.").

[10] *Allegheny*, 954 F.2d at 173–74.

[11] *Id.* at 174.

Here, the Debtors request entry of an order: (i) disallowing and expunging the contingent claims for contribution or reimbursement filed by Axon in their entirety; and (ii) authorizing the claims agent to expunge each of the Axon Claims from the official register.[12] Therefore, since Axon has alleged facts sufficient to support its claim, the burden rests with the Debtors to produce sufficient evidence to discredit at least one of the allegations essential to the claim's legal sufficiency.

### III. Axon's Claim is Not Subject to Disallowance under Section 502(e)(1)(B) of the Bankruptcy Code.

The Debtors' main argument is that the Axon Claims should be disallowed pursuant to Bankruptcy Code section 502(e)(1)(B) because they are contingent claims for reimbursement or contribution asserted by claimants that are co-liable with the Debtors. Bankruptcy Code section 502(e)(1)(B) states:

> (1) Notwithstanding subsections (a), (b), and (c) of this section and paragraph (2) of this subsection, the court shall disallow any claim for reimbursement or contribution of an entity that is liable with the debtor on or has secured the claim of a creditor, to the extent that—
>
> (B) such claim for reimbursement or contribution is contingent as of the time of allowance or disallowance of such claim for reimbursement or contribution.[13]

Three elements must be present for a claim to be disallowed under Bankruptcy Code section 502(e)(1)(B): (i) the claim must be contingent; (ii) the claim must be for reimbursement or contribution; and (iii) the debtor and the claimant must be co-liable on the claim.[14] All three

---

[12] In support of this Objection, the Debtors have submitted the *Declaration of William Gordon in Support of Debtors' First Omnibus (Non-Substantive) Objection to the Claims of Axon Pressure Products, Inc., Axon Energy Products AS and Axon EP, Inc. Under 11 U.S.C. § 502(e)(1)(B)*.

[13] 11 U.S.C. § 502(e).

[14] *In re Touch Am. Holdings, Inc.*, 381 B.R. 95, 107 (Bankr. D. Del. 2008).

elements must be satisfied for the claim to be disallowed,[15] and the Debtors have the initial burden of proof on each element.[16] The parties have agreed that the first two elements are satisfied here. As such, the Court is left to determine only whether the Debtors and Axon are co-liable on the contingent claim.

### a. The Debtors and Axon are not co-liable on the claim.

Under Bankruptcy Code section 502(e)(1)(B), co-liability is a "broad concept that includes all situations where indemnitors or contributors *could be* liable with the debtor."[17] A debtor and a claimant could be found to be co-liable if "the causes of action in the underlying lawsuit assert claims upon which, if proven, the debtor could be liable but for the automatic stay."[18]

Further, Bankruptcy Code section 502(e)(1)(B) does not require that the party to which the claimant and a debtor are liable file a proof of claim.[19] The same is true even if the claims bar date

---

[15] *In re RNI Wind Down Corp.*, 369 B.R. 174, 181 (Bankr. D. Del. 2007) (citing *In re Pinnacle Brands, Inc.*, 259 B.R. 46, 55 (Bankr.D.Del.2001)).

[16] *Juniper Dev. Group v. Kahn (In re Hemingway Trans., Inc.)*, 993 F.2d 915, 925 (1st Cir.1993) (objecting party bears burden of submitting substantial evidence on each element under section 502(e)(1)(B)).

[17] *In re Caribbean Petroleum Corp.*, 2012 WL 1899322, at *1 (Bankr. D. Del. May 24, 2012), *aff'd*, 566 F. App'x 169 (3d Cir. 2014) (emphasis original) (internal quotations omitted); *see also Matter of Baldwin-United Corp.*, 55 B.R. 885, 890 (Bankr. S.D. Ohio 1985) ("The phrase 'an entity that is liable with the debtor' is broad enough to encompass any type of liability shared with the debtor, whatever its basis.").

[18] *Touch Am. Holdings, Inc.*, 381 B.R. at 108 (quoting *In re Wedtech Corp.*, 85 B.R. at 290).

[19] *See In re APCO Liquidating Trust*, 370 B.R. at 635 ("The failure of KDHE to file a claim does not alter the co-liability of the [d]ebtors and [claimant] to KDHE."); *In re RNI Wind Down Corp.*, 369 B.R. at 188 ("The failure of the SEC or the DOJ to file a claim against the [d]ebtors does not, in itself, alter the co-liability to the government of the [d]ebtors and [claimant]."). This is because "[a]pplication of [Bankruptcy Code section 502(e)(1)(B)] is not premised on the actual filing of multiple claims but, rather, on the existence of such claims." *In re APCO Liquidating Trust*, 370 B.R. at 635 (quoting *In re Lull Corp.*, 162 B.R. 234, 238 (Bankr. D. Minn. 1993) in turn quoting *In re Cottonwood Canyon Land Co.*, 146 B.R. 992, 997 (Bankr. D. Colo. 1992)).

has passed and no claim has been filed by the party who could assert claims against the debtor and the claimant.[20]

The Debtors here argue that the Hercules Defendants and Axon are co-liable to Walter. First, while the Hercules Defendants dispute Axon's indemnity and contribution claims, the Debtors argue that the Hercules Defendants "could be" held liable for some or all of the damages asserted by the Walter Parties if (i) Axon is found liable to the Walter Parties in the Pending Litigation, (ii) the District Court rules that Axon has valid indemnification and/or contribution rights against the Hercules Defendants in the Pending Litigation (and, thus, the Hercules Defendants are required to cover any damages awarded against Axon) and (iii) the District Court's rulings with respect to the issues in (i) and (ii) are upheld in the event of an appeal.

The Debtors further argue that co-liability is demonstrated by the allegations contained in the Third Party Complaint. There, Axon alleges that the Hercules Defendants are responsible for the Incident because they provided an insufficient or incompetent crew to work on the *Hercules 265* and failed to take various other actions. Specifically, Axon alleges as follows:

> Axon's third-party claims arise out of the transactions or occurrences that are the subject matter of the claims against Axon. The Incident was not caused by any fault, negligence, acts, omissions, or culpable conduct of Axon, but was caused in whole or in part by the fault, negligent acts, omissions, or culpable conduct of the [the Debtors], and or by conditions for which [the Debtors] are strictly liable under law. As a result, the losses and damages alleged to have been sustained by [the Walter Parties] were proximately caused by the [Debtors]. [The Debtors] are or may be

---

[20] *See In re APCO Liquidating Trust*, 370 B.R. at 635 ("Currently, there is no proof of claim filed by KDHE and the bar date has long since passed. Thus, according to the [claimant], KDHE is unable to seek payment from the [d]ebtors' estate for the same future source control costs currently sought by the [claimant]. As such, the [claimant] urges this Court to find that it is the sole holder of a claim against the [d]ebtors' estate for these costs. The Court cannot agree with the [claimant's] position. In the instant case, it is undisputed that the bar date for KDHE to file a proof of claim passed more than one year ago and that KDHE has failed to file a claim against the [d]ebtors' estates. Nonetheless, the failure of KDHE to file a claim does not alter the co-liability of the [d]ebtors and the [claimant] to KDHE…").

9

> liable to Axon for remedy, indemnity, contribution, or otherwise on account of the same transaction, occurrence, or series of transactions or occurrences made the basis of the claims against Axon.

Based on these allegations, the Debtors claim it is possible that the District Court will rule that the Hercules Defendants are at fault for the Incident.[21]

On the contrary, Axon denies that the Debtors and Axon are co-liable as a result of the release and indemnification provisions contained in the Drilling Contract. Axon argues that the Walter Parties cannot later name the Debtors as defendants, and the Debtors could never be liable to the Walter Parties, because they contractually released the Debtors long before the Incident. Stated more explicitly, the plaintiffs are not asserting claims, and cannot assert claims, upon which Debtors could be liable but for the automatic stay.

While Axon has alleged that the damages suffered by the Walter Parties were caused by the negligent acts, omissions or conduct of the Debtors, the Walter Parties have never asserted any liability of the Debtors because of the Walter Parties' inability to do so due to the binding release and indemnification. Put simply, Axon could be liable to the Walter Parties, and the Debtors could be liable to Axon. But most importantly, the Debtors are not and could not be potentially liable to the Walter Parties alongside Axon. The Debtors attempt to convince the Court that even if the Walter Parties are unable to assert claims against the Debtors, Axon and the Debtors should be found co-liable for purposes of Bankruptcy Code section 502(e)(1)(B).[22] This speculative argument is unpersuasive.

---

[21] The Debtors also point out that the fact that the Walter Parties have not filed proofs of claim in the chapter 11 cases does not undermine the existence of the co-liability of the Hercules Defendants and the Axon.

[22] In support of this argument, the Debtors cite to *In re APCO Liquidating Trust*, in which the court found that a debtor and a claimant may be co-liable even when the debtor is not named as a co-defendant in underlying litigation. However, in that case, the court placed great emphasis on the fact that the judgment under section 113(f)(1) was already obtained, which "presupposes co-liability between the

The Debtors contentions are far too abstract and ask the Court to ignore the agreement between the Debtors and the Walter Parties which contains clear indemnification language. The Walter Parties have not named the Debtors as defendants in the Pending Litigation due to the release and indemnification provisions contained in the Drilling Contract. Further, there are no underlying lawsuits where the Debtors and Axon could be co-liable, as the statute requires. The release provided by the Walter Parties to the Debtors ensures that Axon's claim would never contravene the purpose of § 502(e)(1)(B), which is to avoid duplicative recoveries. As such, I find that the Debtors have failed to establish that the Debtors and Axon are co-liable on the claim for which reimbursement in sought. Therefore, I will overrule the Debtors' Claims Objection. An appropriate order follows.

BY THE COURT:

_____
KEVIN J. CAREY
UNITED STATES BANKRUPTCY JUDGE

Dated: April 13, 2017

---

plaintiff and the defendant." *APCO*, 370 B.R. at 634 (Bankr. D. Del. 2007) (The Comprehensive Environmental, Response, Compensation, and Liability Act (CERCLA) provides three distinct "private" causes of action that allow parties to recover all or part of their cleanup costs from potentially responsible parties ("PRP"). Section 107(a)(4)(B) provides a "direct" right of cost recovery. Sections 113(f)(1) and 113(f)(3)(B) provide a right of contribution following a CERCLA civil action or certain judicial or administrative settlements).

    The court further stated, "[a] prima facie showing under § 113(f) is simply a determination that the defendant PRP would otherwise be held jointly and severally liable under § 107(a)." *Id.* (internal citations omitted). In that case, potential joint and several liability was imposed by federal statute, and, unlike the matter before me, there was no release and indemnification by the original plaintiff and the debtor. However, perhaps most importantly, the claimant had already been granted relief in the form of contribution from a PRP, which has not occurred here.